Heffernan, J.
 

 The defendant on appeal, for the first time, alleges that the cause of action is fatally defective because there was a failure to allege or prove that the plaintiff was a licensed real-estate broker as required by sec. 136.11, Stats.
 
 [2]
 

 
 *635
 
 A defense of this nature cannot be raised initially in the appellate court.
 
 Berning v. Giese
 
 (1957), 274 Wis. 401, 80 N. W. (2d) 270;
 
 Discher v. Industrial Comm.
 
 (1960), 10 Wis. (2d) 637, 103 N. W. (2d) 519.
 

 The defendant contends that this issue was raised by the general language of its motion for dismissal which included the prayer to the court that the action be dismissed “on its merits pursuant to the laws of Wisconsin.” This vague standard motion lacks the specificity to support the particular objection that defendant now wishes to raise. Defendant contends, however, that this omission is of such a nature that the failure to plead the existence of a license is fatal to the cause of action irrespective of when the absence of the allegation of licensure is first brought to the attention of the court.
 
 Levy v. Birnschein
 
 (1932), 206 Wis. 486, 240 N. W. 140, is cited in support of this proposition. It should be noted, however, that in
 
 Levy
 
 the question was raised not on appeal but in the civil court of Milwaukee county. Had the matter been timely raised in the case before us, there is no doubt that this defect could have been cured on the trial court level. We have taken judicial notice of the public records of the Wisconsin Real Estate Brokers’ Board.
 
 [3]
 
 They indicate that E. M. Boerke, Inc., 611 North Broadway, Milwaukee, has been licensed as a real-estate broker in the state of Wisconsin since 1945. We mention this not to cure the defect in the record, but to point out the patent inequity of allowing an objection of this nature to be raised at the appellate level when the matter was easily curable at the trial stage. We conclude that the question is not properly before us now.
 

 It is undisputed that the eventual sale was made within six months of the termination. We also conclude that the
 
 *636
 
 Sanderson Art Company, to whom the property was eventually sold, was a party with whom the broker “negotiated during the life of this contract.”
 

 In
 
 Munson v. Furrer
 
 (1952), 261 Wis. 634, 639, 53 N. W. (2d) 697, we concluded that “negotiated” within the terms of a listing contract “means that the efforts of the broker to interest a prospect must have proceeded to the point where the prospect would be considered a
 
 likely purchaser.”
 
 The rule of the
 
 Munson Case
 
 was correctly applied by the trial judge in his memorandum opinion. He emphasized that the agent of the plaintiff met with the Sandersons during the life of the contract, and that a thorough examination of the premises inside and out was made. The Sander-sons indicated that they were interested in the property by reason of the fact that they owned property immediately adjacent to the Williams property. Subsequent to this first examination there were several contacts by telephone. The trial judge found that the Sandersons “told Mr. Kahn [agent for Boerke] what a reasonable price for the building was,” but no formal offer was ever made. Not only is it reasonable to conclude that Sanderson Art was “a likely purchaser,” but it also could be inferred that the examination of the premises and the negotiations were the direct result of the efforts of Boerke.
 

 Though it is clear that Boerke did negotiate with Sander-son during the life of the contract, that fact is not decisive of this particular lawsuit.
 

 The contract required not only “negotiation” during the life of the contract, but, in addition, that the names of persons with whom negotiations are carried on must be
 
 ‘‘‘'filed
 
 with me in writing
 
 prior
 
 to the termination of this contract.” (Emphasis supplied.) Thus, two added requirements must be met by the plaintiff if he is to recover. He must
 
 “file”
 
 the names in writing, and this action is required
 
 prior
 
 to the termination of the contract.
 

 
 *637
 
 We conclude that the plaintiff’s case' fails to meet these criteria.
 

 Admittedly, Mrs. Williams did not receive the actual list until sometime after January 15, 1957. It is the contention of the plaintiff that the contract expired at the end of the day,
 
 i.e.,
 
 midnight on January 15th. The defendant insists that the contract expired 24 hours earlier,
 
 i.e.,
 
 at the end of the day of January 14th. If the defendant is correct, the action of the plaintiff in mailing a list on January 15th is not sufficient, for it is clear that the first action the plaintiff took in notifying the sellers was on that date. The contract provided that it “shall remain in force until January 15, 1957.” If “until” is a word indicating the exclusion of the date that follows, plaintiff’s action has not been timely. Decisions can be cited to support the position of either party to this lawsuit.
 
 [4]
 

 The word, “until,” is ambiguous and not a word susceptible to exact definition. Webster’s Third New International Dictionary lists the expression “up to” as being synonymous. “Up to” when referring to time is defined in the same dictionary by the following usages, “up to that date they had been generally successful,” “up to the war rural areas were always the dwelling place of the surplus population.” In referring to distances, the example used is, “painted the wall green up to the side door.”
 

 The Webster’s Third New International also states, “until” is “used as a function word to indicate continuance (as of an action, condition, or state) up to a particular time.” As so defined, the word is one of exclusion. On the other hand, 52 Am. Jur., Time, p. 350, sec. 25, admits the literal definition is one of exclusion, but the “popular use is quite as likely to give it an inclusive as an exclusive sense.”
 

 This court has previously examined an analogous problem
 
 (Scheuer & Tiegs, Inc., v. Benedict
 
 (1921), 173 Wis.
 
 *638
 
 241, 181 N. W. 129) where a notice to terminate a tenancy used the phraseology, “You are ... by April 30, 1920, to quit.” Our court held that “by” was an ambiguous word which could be either inclusive or exclusive of the date. In that instance, the interpretation that the word was one of exclusion would have meant that the notice was insufficient, “because under a tenancy from month to month the notice must be to terminate the tenancy at the end of the month and not before.” Supra, page 242. The court there concluded, “conceding that the term has two meanings, one including the date expressed and the other excluding it, the reasonable construction is the one that gives validity to the thing sought to be done, for no one ought to presumé that a nugatory act is intended.”
 
 Supra,
 
 page 243. It is clear that in
 
 Scheuer
 
 the court gave effect to the obvious intent of the parties — to terminate the tenancy at the end of the month. In this case, however, we have no such guideline of interpretation. We can only conclude that the word is ambiguous. We have had occasion to construe another portion of an identical listing contract. In
 
 Dunn & Stringer Investment Co. v. Krauss
 
 (1953), 264 Wis. 615, 619, 60 N. W. (2d) 346, we stated:
 

 “The listing agreement having been a printed form supplied by the plaintiff broker, the same must be most strongly construed against the broker in case of any ambiguity or doubt. 12 Am. Jur., Contracts, p. 795, sec. 252; 17 C. J. S., Contracts, p. 751, sec. 324.”
 
 *639
 
 was still in effect, that would not satisfy the requirement that the notice be “filed with me.”
 

 
 *638
 
 In view of this well-established rule of construction, we conclude that the doubt must be resolved in favor of the defendant’s position that the contract terminated at the end of the day of January 14, 1957. Hence, the action taken by the plaintiff on January 15th was not timely.
 

 We would conclude, also, that had the mailing taken place on the last day of the term of the contract, while it
 

 
 *639
 
 Webster’s Third New International Dictionary defines “file” “to deliver (as a legal paper or instrument) after complying with any condition precedent ... to the proper officer . . .”
 

 To construe or define “mailing” as “filing” is to ignore the plain meaning of the word. Mailing merely initiates the process by which an article in the due course of the post will be delivered. The requirement of the contract in question is that the notice be filed or delivered to the party offering property for sale.
 

 We agree with the trial judge that mailing is frequently sufficient to satisfy the legal requirements imposed in the day-to-day conduct of business. For example, the acceptance of an offer is binding from the moment an offeree deposits a properly addressed letter of acceptance in the mailbox, but only if there is an express or implied authorization that the mails are to be used.
 
 [5]
 
 Such an implied authorization would arise when the offer is communicated by mail. There is nothing in the record in this case that would expressly or by implication authorize the posting of the notice in lieu of filing. We do not consider that the statutory procedure for service of papers by mail is analogous.
 
 [6]
 
 The circumstance under which sec. 269.34 (4), Stats., is applicable is clearly not that contemplated by the contract before us. The
 
 *640
 
 statute, sec. 269.36,
 
 [7]
 
 also recognizes that when mailing is an appropriate method of service, additional time is given for the other party to act. This is legislative recognition that the ordinary time requirement should in fairness not be applicable when a person elects to accomplish a jural act through the mails instead of personally.
 

 A real-estate broker is not unable to protect himself against these infirmities in his contract. The termination date can be simply stated. It requires no great drafting skill to clearly specify the hour and date on which a contract shall terminate. If it is intended that the requirements of notice are to be satisfied by mailing and delivery thereafter in due course of post, the contract should say so.
 

 In view of the failure of the broker to notify the vendor as provided by the contract, we need not consider the defendant’s additional contentions that the action is barred by laches or the running of the statute of limitations.
 

 By the Court.-
 
 — -Judgment reversed.
 

 [2]
 

 Sec. 136.11, Stats., reads as follows:
 

 “Limitation on actions for commissions. No person engaged in the business or acting in the capacity of a real estate broker or salesman within this state shall bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without
 
 *635
 
 alleging and proving that he was a duly licensed broker or salesman at the time the alleged cause of action arose.”
 

 [3]
 

 Currie, Judicial Notice, 1960 Wisconsin Law Review, 39, 43.
 

 [4]
 

 43 Words and Phrases (perm, ed.), Until, p. 404.
 

 [5]
 

 17 C. J. S., Contracts, p. 719, sec. 52b; 17 Am. Jur. (2d), Contracts, p. 387, sec. 48, p. 389, sec. 49; and 1 Corbin, Contracts, p. 333, sec. 78.
 

 [6]
 

 Sec. 269.34 (4), Stats., provides:
 

 “Service may be made by mailing such copy where the person making the service and the person on whom it is made reside in different places between which there is a communication by mail. Service by mail is complete upon mailing.”
 

 [7]
 

 Sec. 269.36, Stats., provides:
 

 “Mail service INCREASES time allowed. If a certain time before an act to be done is required for the service of any paper and if, after service of any paper, a specified time is allowed a party to do an act in answer to or in consequence of such service, service by mail shall increase by S days the time required or allowed to do such act in case of personal service.”