George SILIDES, Appellant,

v.

Lowell THOMAS, Jr., Lieutenant
Governor, Appellee.

Lieutenant Governor Lowell
THOMAS, Jr., Petitioner,

v.

L. T. (Len) KELLEY, Respondent.

Lieutenant Governor Lowell
THOMAS, Jr., Petitioner,

v.

Leo P. SCHAEFFER, Respondent.

Nos. 3019 to 3021.

Supreme Court of Alaska.

Jan. 17, 1977.

William G. Ruddy, Robertson, Monagle, Eastaugh & Bradley, Juneau, for George Silides.

Wilson L. Condon and Robert M. Johnson, Asst. Attys. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee and for petitioner in Nos. 3020 and 3021.

William D. Artus, Lytle & Associates, Anchorage, for respondent L. T. (Len) Kelley.

Kenneth D. Jensen, Jensen, Harris & Roth, Anchorage, for respondent Leo P. Schaeffer.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

RABINOWITZ, Justice.

These consolidated cases present questions regarding several of Alaska's laws governing elections.

George C. Silides' declaration of candidacy for a seat in the Alaska House of Representatives for House District 20 was rejected by the Lieutenant Governor for the reason that Silides had failed to meet the deadline for filing his financial disclosure statement required by AS 39.50.020. Thereafter, Silides instituted an action in the superior court seeking injunctive relief requiring the Lieutenant Governor to place his name on the ballot for the forthcoming August 24, 1976, primary election. At the conclusion of the evidentiary hearings, Judge Compton entered findings of fact, conclusions of law, and a judgment in which it was decreed that the Lieutenant Governor was not required to place Silides' name on the ballot for the impending primary election. Silides filed a notice of appeal thus prompting the

superior court to amend its final judgment to order that Silides' name be printed on the ballot pending resolution of the instant appeal.[1]

Thereafter the Silides matter received expedited appellate treatment. Oral argument was heard on July 29, 1976, and an order was entered by this court on the same date.[2] This order required that the matter be remanded to the superior court for the entry of an additional finding of fact. More particularly, our order required the superior court to determine

> . . . whether or not appellant George C. Silides mailed on June 1, 1976, a financial disclosure statement . . .[3] (footnote omitted)

This order further provided that:

> In the event . . . the Superior Court determines upon remand that appellant mailed a financial disclosure statement on June 1, 1976, then his name is to remain on the forthcoming primary ballots. If a finding is made that appellant did not mail his financial disclosure statement on June 1, 1976, his name is to be forthwith stricken for the forthcoming primary election.

The superior court then promptly reviewed the file, exhibits and testimony previously received and on July 30, 1976, entered supplemental findings of fact. *Inter alia,* the court made the following controlling findings of fact:

> . . . There is no independent evidence to establish that Plaintiff deposited an envelope addressed to A.P.O.C. in the U. S. Postal Service collection box on June 1, 1976.

> . . . It is more probably true than not that Plaintiff's Financial Disclosure Statement was not mailed on June 1, 1976. The Court so finds.

1. The superior court further ordered that on August 1, 1976, or upon receipt of an order from this court (whichever occurred earlier), Silides' name would be stricken from the primary election ballot.

2. Justice Burke dissented.

3. Concerning this finding we advised the superior court that it ". . . may consider the date indicated on the postmark on the envelope as evidence of the date of mailing, but such evidence does not create an irrebuttable presumption."

In accordance with paragraph (3) of the remand order of July 29, 1976, this Court having found that the Financial Disclosure Statement was not mailed on June 1, 1976,

IT IS ORDERED that plaintiff's name is to be forthwith stricken from the ballots for the forthcoming primary election.

In the L. T. (Len) Kelley matter, we granted review on the Lieutenant Governor's petition of Judge Kalamarides' decision of July 15, 1976, which directed him to place Kelley's name "on the ballot as a candidate for the State Legislature, House District 8, in the forthcoming 1976 primary election." The Lieutenant Governor had notified Kelley that his declaration of candidacy for the Democratic nomination for one of the seats from House District 8 was rejected due to his failure to timely file an appointment of campaign treasurer as required by AS 15.13.060. Thereafter, Kelley filed an action in the superior court seeking an order declaring that he was a qualified candidate, placing his name on the ballot for the 1976 election year and permanently enjoining the Lieutenant Governor from removing his name from the 1976 election ballot. The matter came before the superior court upon a factual stipulation and cross-motions for summary judgment. In his decision Judge Kalamarides stated in part:

. . . The candidacy requirements should be strictly complied with, but in this regard one must note what is viewed as being of paramount importance here, the failure, intentional or otherwise, to apply the statutory requirements pertaining to the candidacy qualifications process with similar force to all would be candidates. For this reason, if no other, this court holds that the plaintiff has been denied the equal rights, opportunities, and protections under the law granted to him by Article I, section 1, of the Alaska Constitution.

. . . Plaintiff's motion for summary judgment is granted. The Lieutenant Governor is hereby directed to place Plaintiff's name on the ballot as a candidate for the State Legislature, House District 8, in the forthcoming 1976 primary election.

The Lieutenant Governor filed a petition for review of the superior court's decision. Review was granted, oral argument held and a prefatory order entered on July 29, 1976. By virtue of this order the superior court's decision of July 15, 1976, was reversed and Kelley's name was ordered "forthwith stricken from the ballots for the forthcoming primary election because of his failure to comply with AS 15.13.060(c)." [4]

The Leo P. Schaeffer case is somewhat factually similar to the Kelley case. In the Schaeffer matter we granted review of Judge Kalamarides' decision of July 15, 1976, which provided in part that:

This case was heard in tandem with the Kelley case, and taking notice of certain evidence submitted therein, this court is constrained to hold that this plaintiff for the reasons stated in the decision rendered in that companion case, is deemed qualified as of this date to have his name placed on the ballot in the upcoming primary election.

. . . The lieutenant governor is hereby directed to place plaintiff's name on the ballot as a candidate for the State Legislature, House District 21, in the forthcoming 1976 primary election.

Schaeffer's candidacy was rejected by the Lieutenant Governor because of his asserted failures to timely file a financial disclosure as required by AS 39.50.020 and an appointment of campaign treasurer as required by AS 15.13.060. Thereafter Schaeffer instituted suit for preliminary injunctive relief and, after hearing, Judge Kalamarides issued his decision. As previously indicated we granted review upon the petition of the Lieutenant Governor, and after expedited hearing entered an order, on July 29, 1976, which reversed Judge Kalamarides' decision and ordered that Schaeffer's

---

4. In our order in the Kelley case, as well as in the orders which were entered in the Silides and Schaeffer matters, it was indicated that an opinion would be forthcoming.

name be forthwith stricken from the ballots for the forthcoming primary election because of his failure to comply with AS 15.13.060(c).

Before discussing in detail the basis for our decisions in these cases, we think it appropriate that the statutory framework against which these appellate matters must be resolved be outlined. A candidate for the Alaska Legislature must meet certain statutory prerequisites before his or her name may be placed on the primary ballot. First, the candidate must file a declaration of candidacy pursuant to AS 15.25.030 and AS 15.25.040.[5] Secondly, pursuant to AS 15.25.050, the candidate is required to pay a filing fee at the time his declaration of candidacy is filed. Thirdly, AS 39.50.020 requires that the candidate file a financial disclosure statement.[6] The final requirement, found in AS 15.13.060(c), specifies that the candidate must appoint a campaign treasurer whose name and address must be filed.[7]

AS 15.25.040 provides that the declaration of candidacy of a candidate for district-wide

5. AS 15.25.040(a) and (c) provide as follows:
(a) The declaration is filed by either
(1) the actual physical delivery of the declaration in person at or before 5:00 p. m., prevailing time, June 1 of the year in which a general election is held for the office, or
(2) the actual physical delivery by telegram of a copy in substance of the statements made in the declaration at or before 5:00 p. m., prevailing time, June 1 of the year in which a general election is held for the office and also the actual physical delivery of the declaration by registered mail which is postmarked at or before 5:00 p. m., prevailing time, June 1 of the year in which a general election is held for the office and received not more than 15 days after that time.
(c) A candidate for a statewide office shall file with the lieutenant governor. A candidate for a district-wide office shall file either with the lieutenant governor or an election supervisor. If the candidate files his declaration with an election supervisor, the election supervisor shall immediately forward the declaration to the lieutenant governor.

6. AS 39.50.020 is a provision of the Conflict of Interest Act, effective on December 11, 1974, which became law by virtue of Initiative No. 2. AS 39.50.020 provides as follows:
(a) A judicial officer, commissioner, chairman or member of a state commission or board specified in § 200(9) of this chapter, person hired or appointed as head or deputy head of, or director of a division within, a department in the executive branch, person appointed as assistant to the governor, and a municipal officer, shall file a statement giving his income sources and business interests, under oath and on penalty of perjury, within 30 days after he takes office as a public official. Candidates for state elective office shall file such a statement at the time of filing a declaration of candidacy or within 30 days of the filing of any nominating petition, or within 30 days of becoming a candidate by any other means. Candidates for elective municipal office shall file such a statement at the time of filing a nominating

petition, declaration of candidacy, or other required filing for the elective municipal office. Refusal or failure to file within the time prescribed shall require that the candidate's filing fees, if any, and filing for office be refused or that his previously accepted filing fee be returned and his name removed from the filing records. A statement shall also be filed by public officials no later than April 15 or 15 days after the person files his federal income tax return in each following year, whichever shall come first. Persons who, on or after December 11, 1974, were members of boards or commissions not named in § 200(9) of this chapter are not required to file financial statements.
(b) The governor, lieutenant governor, members of the legislature, and candidates for these offices, judicial officers, each commissioner, head or deputy head of, or director of a division within, a department in the executive branch, assistant to the governor or chairman or member of a commission or board required to report under this chapter, shall file the statement with the Alaska Public Offices Commission. Municipal officers, and candidates for elective municipal office, shall file with the municipal clerk or other municipal official designated to receive their filing for office. All statements required to be filed under this chapter are public records.

7. AS 15.13.060(c) is a provision of the Campaign Disclosure Act which became law by the enactment of Chapter 76, SLA 1974. AS 15.-13.060(a) and (c) provide as follows:
(a) Each candidate and group shall appoint a campaign treasurer who is responsible for receiving, holding, and disbursing all contributions and expenditures, and for filing all reports and statements required by law. A candidate may be a campaign treasurer.
(c) Each candidate shall file the name and address of the campaign treasurer with the commission no later than seven days after the date of filing his declaration of candidacy

office may be delivered in person to the office of the Lieutenant Governor or to an election supervisor before 5 p. m. (prevailing time) on the June 1st immediately preceding the election.[8] AS 39.50.020(a) provides that the candidate must file a financial disclosure statement at the same time that the candidate is required to file a declaration of candidacy. AS 39.50.020(b) further provides that the financial disclosure statement must be filed with the Alaska Public Offices Commission whose office is located in Anchorage.[9] Within seven days after the candidate files his declaration of candidacy, he must appoint a campaign treasurer and must file the name and address of the campaign treasurer with the Alaska Public Offices Commission in Anchorage.[10]

It is against this statutory background that we now turn to the individual cases before us. On June 1, 1976, at approximately 8:30 a. m., Silides went to the office of the Lieutenant Governor in Juneau, filed his declaration of candidacy and paid the requisite filing fee. He brought with him at that time his financial disclosure statement and had an employee in the Lieutenant Governor's office notarize it.[11] Silides subsequently mailed his financial disclosure statement to the Alaska Public Offices Commission in Anchorage. The envelope bore the Juneau postmark "June 2 p. m. 1976." The disclosure statement arrived in the mail at the Alaska Public Offices Commission in Anchorage on June 4, 1976.

After hearing evidence on the matter, Judge Compton ruled that "deadlines imposed for requirements which must be met by would-be candidates before they may qualify to have their names placed on the primary ballot are strictly construed and strictly enforced"; that AS 39.50.020 expresses a deadline for the filing of financial disclosure statements which must be "strictly enforced"; and that "there is no ambiguity concerning what that deadline actually is." The superior court further held that substantial compliance with a filing deadline is "not sufficient";[12] that a candidate

or his nominating petition. The name of the candidate may be placed on the ballot by the lieutenant governor or municipal clerk only if the candidate has complied with this subsection.

**8.** *See* note 5 *supra*. Election supervisors' offices are located in Juneau, Anchorage, Nome and Fairbanks. *See* AS 15.10.110.

Pursuant to AS 15.25.040(a)(2), the candidate for district-wide office, at his or her option, may file the declaration of candidacy by the physical delivery of a telegram containing the information required by AS 15.25.030 before 5 p. m. on the 1st of June to either the office of the Lieutenant Governor or one of the several previously mentioned election supervisors' offices. The mailed declaration of candidacy must be postmarked at or before 5 p. m., June 1. *See* AS 15.25.040(a)(2).

AS 15.25.050 requires that at the time the declaration of candidacy is filed "each candidate shall pay a filing fee to the lieutenant governor."

**9.** For the text of AS 39.50.020(a) and (b) see note 6 *supra*.

**10.** AS 15.13.060(c). For the text of this portion of Alaska's Campaign Disclosure Act see note 7 *supra*.

**11.** The Alaska Public Offices Commission, in anticipation of the 1976 elections, prepared what has been called a "blue instruction sheet." Mr. Silides admitted he received the blue instruction sheet. In this document candidates were informed that financial disclosure statements must be filed "at the time of filing a declaration of candidacy." Additionally, the candidate was advised as follows:

While this form is to be filed with the Public Offices Commission, for your convenience, it is suggested that you complete the attached form and submit one copy with your nominating petition and retain the other copy for your records. The office accepting your nominating petition will then note that you have complied with the Financial Disclosure Law timely and will then forward your financial disclosure statement to the Public Offices Commission.

The record shows that after the financial disclosure statement was notarized, another employee in the Lieutenant Governor's office urged Silides to file the statement with that office at that time.

**12.** In connection with this point the court further stated:

The reason for rejecting the doctrine of substantial compliance is that the doctrine would make the qualification procedure subject to arbitrary abuses and very likely create more, rather than fewer, conflicts in the enforcement of election filing deadlines.

can be excused from compliance with the deadline imposed by AS 39.50.020 "only if he can demonstrate as a matter of fact that he has been affirmatively misled concerning the time of, or method of, complying with the deadline requirements." Central to the superior court's conclusion that the Lieutenant Governor properly refused to place Silides' name on the ballot was the court's ruling that the term "file" did not comprehend placing the particular document in the United States mail. On the contrary, the court defined the term as meaning "the physical delivery of the document or paper required to be filed to the official or office of the designee of the official or office with whom the document or paper must be filed."

Before this court, Silides first argued that the proper location for the filing of the financial disclosure statement is unclear. In support of this contention, Silides contrasts the direction embodied in AS 39.50.-020(b) which requires financial disclosure statements to be filed in the office of the Alaska Public Offices Commission in Anchorage, with the administrative practice of the Lieutenant Governor's office which has customarily accepted financial disclosure statements from candidates and has then forwarded the statements to the Alaska Public Offices Commission.[13] Secondly, and more significantly, Silides contended that the superior court erred in concluding, as a matter of law, that AS 39.50.020 was not ambiguous. Central to this argument is the view that AS 39.50.020(a) contemplates that the act of filing a financial disclosure statement by a candidate is to be carried out concurrently with the act of filing the dec-

laration of candidacy. In Silides' view it is "patently impossible" for him to have filed his financial disclosure statement at the same time he filed his declaration of candidacy, since the latter may be filed in Juneau (AS 15.25.040(c)) while the only authorized place of filing the former is Anchorage (AS 39.50.020).

■■■ Given the statutorily created tension between the place of filing requirements found in AS 39.50.020(b) and AS 15.25.040(c), we were persuaded by Silides' arguments and concluded that this factual circumstance presented an appropriate occasion for departure from the normally salutary doctrine that election deadlines must be strictly construed and strictly enforced.[14] We concluded, given the lack of clarity inherent in AS 39.50.020 and the impossibility of compliance with AS 39.50.020 for a would-be candidate living in Juneau who files his declaration of candidacy near the June deadline, that substantial compliance with the filing requirements of AS 39.50.-020 would suffice.[15] Thus we held that if Silides mailed his financial disclosure statement to the Alaska Public Offices Commission in Anchorage on June 1, 1976, then his name was to appear on the forthcoming primary ballot. As mentioned earlier, upon remand the superior court found that Silides had not mailed his financial disclosure statement prior to the expiration of the June 1, 1976, deadline. As a result Silides' name did not appear on the primary ballots.

The Kelley and Schaeffer cases turn on whether or not these petitioners timely complied with the filing requirements of AS 15.13.060(c) of the Campaign Disclosure

---

**13.** Silides notes that the Alaska Public Offices Commission deems these statements timely filed if they are timely filed with the Lieutenant Governor's office.

As a further source of filing confusion Silides points to the Notice to Candidates which was published by the Alaska Public Offices Commission. In the cover letter to this document, it is stated that candidates may submit their financial statements with their "Nominating Petitions." Silides thus asserts that "[c]uriously, the same convenience is not extended by the

Alaska Public Offices Commission to non-petition candidates such as Plaintiff."

**14.** These doctrines will be discussed subsequently in more detail.

**15.** Justice Burke dissented from this position. In his view, AS 39.50.020 required that the candidate's financial disclosure statement be filed, that is physically received, in the Anchorage office of the Alaska Public Offices Commission prior to expiration of the June 1, 1976, deadline.

Act.[16] This statute mandates that the candidate file the name and address of his or her campaign treasurer with the Alaska Public Offices Commission no later than seven days after the date of filing his declaration of candidacy. AS 15.13.060(c) explicitly provides that the Lieutenant Governor may place the name of the candidate on the ballot "only if the candidate has complied with this subsection."

■ Our conclusion that the names of both Kelley and Schaeffer should be stricken from the August primary ballots was based on their respective failures to comply with the filing deadline called for by AS 15.13.060(c). Our holdings in the Kelley and Schaeffer cases were grounded on the legal principle that statutory candidate election deadlines are normally strictly enforced. *See McGinnis v. Board of Supervisors of Elections,* 244 Md. 65, 222 A.2d 391, 393 (Md.1966); *Chamberlain v. Board of Supervisors of Elections,* 212 Md. 342, 129 A.2d 121 (1957); *State v. Zimmerman,* 257 Wis. 443, 43 N.W.2d 681 (1950). The rationale for requiring strict adherence to these deadlines was thoughtfully articulated by the Supreme Court of Vermont in *Ryshpan v. Cashman,* 132 Vt. 628, 326 A.2d 169, 170 (1974), in the following manner:

> The [public official responsible for administering elections] is not authorized to alter or amend mandatory statutes at will, but is bound to follow their requirements, subject only to whatever authority he may be given within their provisions to make or whatever extent directing he may, by law, be bound to obey. *To say*

otherwise *would be to invite individual* [officials] *to render election law confused or chaotic, or to ignore it altogether, according to their personal evaluation of circumstances.* (emphasis added)

Since we thought it clear from the text of AS 15.13.060(c) that untimely filing of an appointment of treasurer notification is fatal to a candidacy, and that the statute vested no discretion in the Lieutenant Governor in the circumstance of such non-compliance, we held that AS 15.13.060(c) should be strictly enforced.[17]

The factual situation in the Kelley case which led to our conclusion that AS 15.13.-060(c) should be strictly enforced and that no circumstances were shown which would justify departure from this principle was as follows. Kelley timely filed his declaration of candidacy, filing fee and financial disclosure statement in the appropriate offices. According to the parties' stipulated facts, on June 7, 1976, Kelley

> through his treasurer, William D. Artus, telephoned the Anchorage office of the Alaska Public Offices Commission and Mr. Artus informed said office that he was serving as treasurer for the election campaign of L. T. (Len) Kelley. During that conversation, Mr. Artus left his name and address with the Alaska Public Offices Commission.[18]

Kelley unsuccessfully attempted to persuade the Lieutenant Governor that this June 7th telephone conversation constituted substantial compliance with the campaign treasurer filing provisions of AS 15.13.-060(c). Thereafter Kelley filed an action in

---

**16.** For the full text of AS 15.13.060(c) see note 7 *supra.*

**17.** *See Vandross v. Ellisor,* 347 F.Supp. 197, 207 (D.S.C.1972); *Fannin v. Cassell,* 487 S.W.2d 919 (Ky.1972); *Andrews v. Secretary of State,* 235 Md. 106, 200 A.2d 650 (1964); *State v. Batchelor,* 15 Wash.2d 149, 130 P.2d 72 (1942).

**18.** In an affidavit filed in superior court, William Artus averred, in part, that:

> Later that same day, I called the office of the Alaska Public Offices Commission and spoke with Ms. Wilda Hudson regarding my duties and the requirements of the office of

campaign treasurer. During that conversation, Ms. Hudson informed me that a pamphlet or booklet listing the filings, deadlines, and other requirements for campaign treasurer was in the process of being printed and was not available at that time. She further informed me that a campaign treasurer did not have to file any papers or reports until 30 days prior to the primary election.

> Also during the above referenced phone conversation, I left my name and address with Ms. Hudson at the same time indicating that I would be acting as campaign treasurer for L. T. "Len" Kelley.

the superior court seeking an order compelling the Lieutenant Governor to place his name on the ballot. In his amended complaint Kelley alleged seven separate causes of action in support of his requested relief. However, as indicated previously, Judge Kalamarides' decision was grounded on only one of these, specifically that the Lieutenant Governor's unequal enforcement of AS 39.50.020 precluded him from enforcing the filing requirements of AS 15.13.060 as to aspiring candidates.[19]

Of the numerous grounds which were advanced both here and in the superior court requiring Kelley's name to appear on the ballot, we will only discuss in detail those grounds which we deem warrant more than summary disposition.

⬛ A major contention advanced by Kelley both here and before the trial court is that Artus' telephone conversation of June 7th constituted the filing of the campaign treasurer statement called for by AS 15.13.060(c). We rejected this contention for several reasons. AS 15.13.060(c) requires candidates to "file" campaign treasurer statements within a specified time limit. The definition of "file" is well established in the law. It has been consistently held that a document is filed only when the proper office has received it, and that it is not considered filed when it is deposited in the mails. *Blades v. United States,* 407 F.2d 1397, 1399 (9th Cir. 1969); *United States v. Easement and Right-of-Way,* 386 F.2d 769, 771 (6th Cir. 1967); *Wirtz v. Hod Carriers Local 169,* 246 F.Supp. 741, 750 (D.Nev.1965); *Mears v. Mears,* 206 Va. 444, 143 S.E.2d 889 (1965); *E. M. Boerke, Inc. v. Williams,* 28 Wis.2d 627, 137 N.W.2d 489, 493 (1965). *See also Wade v. Dworkin,* 407

P.2d 587 (Alaska 1965). Given the text of AS 15.13.060(c), the legal meaning of the term "file" and our adoption of the doctrine that statutory election deadlines are to be strictly enforced, we concluded that the June 7th telephone conversation cannot be deemed an appropriate filing within the intendment of AS 15.13.060(c).[20]

⬛ Kelley next contends that AS 15.13.-060 is unconstitutional in that it sets up "invalid class legislation." We find this contention devoid of merit. The two groups classified by virtue of AS 15.13.060 are those candidates who have complied with the law and those who have not; the failure to adhere to AS 15.13.060 is the dividing line. Therefore, we hold that under any possible equal protection test AS 15.13.060 passes constitutional muster.

⬛ Kelley's third contention is that Alaska's laws requiring timely filing of election related information are being applied in an arbitrary and capricious manner. Kelley's position is that since AS 39.50.020 has been unequally enforced, AS 15.13.-060(c) cannot be strictly enforced and thus Artus' telephone call must be deemed a sufficient filing. Our review of the record has convinced us that Judge Kalamarides erred in holding that unequal enforcement of AS 39.50.020 required the conclusion that Kelley had in fact substantially complied with the filing requirements of AS 15.13.-060(c). When faced with a claim of unequal enforcement of civil laws, we think it appropriate that the claimant meet the criteria articulated in *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497, 503 (1944). There the Supreme Court of the United States set forth the following test:

---

**19.** This ruling of Judge Kalamarides was based on the equal protection clause of art. I, sec. 1 of the Alaska Constitution.

The facts upon which Judge Kalamarides concluded that AS 39.50.020 had been enforced in an unconstitutional manner were as follows: Ms. Hudson testified that as a matter of policy, incumbent legislators who had previously filed a financial disclosure form as required by AS 39.50.020 were not required to refile the same forms with the Alaska Public Offices Commission at the time they filed their declaration of

candidacy a few weeks later. Further evidence was adduced that Ms. Susan Sullivan, an incumbent legislative candidate, failed to file her financial disclosure statement by the April 15 deadline imposed on incumbent legislators; she filed a few days later.

**20.** At oral argument, Mr. Artus disavowed any previous intimation that he had in any way been misled by personnel of the Alaska Public Offices Commission as to the deadline or filing requirements for the campaign treasurer statement.

The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.[21]

We agree with Judge Friendly's statement in *Sirbo Holdings, Inc. v. Commissioner of Internal Revenue,* 509 F.2d 1220, 1222 (2d Cir. 1975), in which he said, "The making of an error in one case . . . gives other[s] . . . no right to its perpetuation." The record here simply does not show an instance of intentional or purposeful discrimination against Kelley.

▮ For his fourth argument Kelley asserts that only after the Alaska Public Offices Commission has concluded an investigation pursuant to AS 15.13.030(8) and AS 15.13.045 and a hearing pursuant to AS 15.13.045 can the name of the candidate be referred to the Lieutenant Governor for exclusion from the ballot. The text of AS 15.13.060(c) controls disposition of this contention, for under this provision it is the Lieutenant Governor who is prohibited from placing the names of candidates on the ballot if they fail to timely file.

▮ Kelley also contends that due process of law entitled him to a hearing before his name could be excluded from the ballot by the Lieutenant Governor. We find this argument unpersuasive since the pertinent statutes do not require a hearing and the record shows that none of the relevant facts are in dispute. Under such circumstances the Lieutenant Governor was not required to conduct an administrative hearing. *See Anti-Defamation League of B'nai B'rith v.*

*FCC,* 131 U.S.App.D.C. 146, 403 F.2d 169 (1968), *cert. denied,* 394 U.S. 930, 89 S.Ct. 1190, 22 L.Ed.2d 459 (1969); *Sun Oil Co. v. FPC,* 256 F.2d 233 (5th Cir. 1958).

▮ Kelley's final contention is that the statutory requirement that a candidate's designation of treasurer be filed by a specified due date "has no reasonable relationship to any legitimate governmental purpose and fosters arbitrary enforcement by the State." We find this contention lacking in merit. Under Alaska's Constitution, it is within the province of the legislature to establish election procedures. We remain unpersuaded that the legislature's choice of a deadline for the filing of a campaign treasurer designation was constitutionally unreasonable.[22]

This brings us to Schaeffer's position. Our disposition of the Kelley petition furnishes the basis for resolution of several of the issues Schaeffer raised in the superior court and before this court. It will be recalled that Schaeffer, a resident of Kotzebue, attempted to qualify as a candidate for the legislature representing House District 21 in the 1976 primary election. On May 28, 1976, Schaeffer sent the Lieutenant Governor a telegram containing substantially all of the information necessary for a declaration of candidacy and followed this telegram with an actual declaration of candidacy.[23] However, Schaeffer sent, on or about June 13, 1976, his financial disclosure statement and designation of campaign treasurer to the office of the Alaska Public Offices Commission in Anchorage. These documents were received in Anchorage on June 15, 1976, and because the financial disclosure statement was two weeks late

---

21. *See also Friedlander v. Cimino,* 520 F.2d 318, 319–20 (2d Cir. 1975); *Tollett v. Laman,* 497 F.2d 1231, 1233 (8th Cir. 1974).

22. Kelley also made the argument that the requirement of filing a declaration of campaign treasurer within seven days after filing a declaration of candidacy excluded Saturdays and Sundays. This position fails in light of the provisions of AS 01.10.080 which states:

> The time in which an act provided by law is required to be done is computed by excluding the first day and including the last, unless the last day is a holiday, and then it is also excluded.

*See also Wade v. Dworkin,* 407 P.2d 587 (Alaska 1965).

23. *See* AS 15.25.040(a)(2) which authorized this procedure. Schaeffer also sent a check for $30 with his declaration in satisfaction of AS 15.25.050.

and the designation of campaign treasurer one week late, the Lieutenant Governor determined that Schaeffer's name should not be placed on the ballot.

Schaeffer brought suit in the superior court where his case was consolidated with Kelley's and the matter then heard by Judge Kalamarides. As noted earlier, Judge Kalamarides grounded his decision to permit Schaeffer's name to appear on the ballot upon the conclusion that AS 39.50.020 had been subject to unequal enforcement and therefore Schaeffer's apparent noncompliance with the deadlines of AS 15.13.-060(c) and AS 39.50.020 was excusable. After expedited processing of the Lieutenant Governor's petition for review, we reversed Judge Kalamarides' decision on the sole ground that Schaeffer had failed to timely comply with the campaign treasurer designation filing requirements of AS 15.13.-060(c).

■ As in the Kelley case, our review of the record in Schaeffer's case has convinced us that a finding of an "intentional or purposeful discrimination" against Schaeffer is simply not sustainable. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497, 503 (1944). Thus, faced with a record devoid of such a showing, we concluded that Judge Kalamarides erred with respect to the express rationale for his decision ordering Schaeffer's name to be placed on the ballot. Our discussion in the Kelley case regarding the wisdom of adopting a strict enforcement standard for statutorily imposed election deadlines is equally applicable to the instant case. Absent a showing that Schaeffer was misled as to the necessity of filing a campaign treasurer designation or as to the time for filing such designation, we concluded that no circumstances were apparent in the record which justified departure from the rule of strict enforcement of statutory election filing deadlines.[24]

■ Schaeffer has also advanced the argument that the Lieutenant Governor is estopped from employing the grounds of untimely filing against him because of the Lieutenant Governor's failure to make designation of campaign treasurer forms available in Kotzebue on May 28, 1976 (the time when Schaeffer filed his declaration of candidacy). Assuming arguendo that estoppel is available against the Lieutenant Governor, we are of the view and so hold that the Lieutenant Governor did in fact comply with AS 15.13.020(j).[25] AS 15.13.020(j) requires forms to be made available in a regional office in each senate district. Nome was designated center for such forms pursuant to both AS 15.13.020(j) and AS 15.10.110. Since Nome is the central office for Senate District P, which encompasses House District 21 and therefore Kotzebue, the Lieutenant Governor complied with the law by virtue of furnishing forms to the Nome regional office.[26]

24. The record shows that on May 28, 1976, Schaeffer sent a telegram from Kotzebue to the Supervisor of Elections in Juneau. This telegram read in part:

Am mailing under postmark of May 29 declaration of candidacy for representative this district. Do not have forms but am following Section 15.25.030 . . . . If any question please call me collect at 442–3193.

At the time this telegram was received in Juneau, Schaeffer was in compliance with all the requirements of title 15, chapter 25. Since Schaeffer had access to title 15, chapter 25 of the Alaska Statutes, there was nothing in the text of the telegram that would have alerted election officials that Schaeffer was unaware of the requirements of AS 15.13.060(c).

25. AS 15.13.020(j) provides:

The commission shall establish an office, which may be called a regional office, in each senate district in the state to keep on file for public inspection copies of all reports filed with the commission by candidates for statewide office and by candidates for legislative office in that district; however, where one municipality contains more than one election district, only one commission office shall be established in that municipality. The regional office shall make all forms and pertinent material available to candidates. All reports shall be filed by candidates, groups and individuals directly with the commission's central district office. The commission shall insure that copies of all reports by statewide and legislative candidates in each senate district are forwarded promptly to that district or regional office.

26. Since we reversed Judge Kalamarides on another ground, we will not consider Schaeffer's next argument concerning the filing of a financial disclosure statement.

Schaeffer's final argument is based on the provision of AS 15.13.030(10) which provides that the Alaska Public Offices Commission shall "adopt regulations necessary to implement and clarify the provisions of the Administrative Procedure Act (AS 44.62)." His point is that the failure to promulgate regulations in accordance with AS 15.13.030(10) prevented him from knowing where forms could be obtained. Although it would have been preferable to have promulgated regulations, we do not think any regulations were necessary to implement the mandatory filing provisions established by AS 15.13.060(c).

It is for the above reasons that we concluded that the names of Kelley and Schaeffer should not appear on the primary ballot and that the Silides matter should be remanded to the trial court for an additional finding of fact before a determination could be made as to whether or not his name should appear on the ballot.

We think some final observations are in order. It is apparent from the issues raised in these consolidated proceedings that Alaska's election laws and administrative practices thereunder are confusing and require revision in order to achieve needed goals of fairness, accessibility, simplification and clarity. Alaska's election laws should be so structured as to encourage its qualified citizens to seek election to public office. These cases, and in particular that of Leo Schaeffer, dramatically demonstrate that Alaska's present election laws at times impose an array of confusing and conflicting obstacles to proper filing for election to Alaska's legislature. Given the vast geographical expanse of Alaska and its diverse cultures, together with transportation and communication problems, the task facing the legislature, the Lieutenant Governor, and the Alaska Public Offices Commission is necessarily a difficult one, yet one that must be addressed.