UNITED FARM AGENCY OF WISCONSIN, INC.
Plaintiff-Respondent-Petitioner,

v.

William KLASEN and Janet Klasen,
Defendants-Appellants.

Supreme Court

*No. 81–1284. Argued April 27, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 110.)

For the petitioner there were briefs by *Thomas D. Bell* and *Doar, Drill & Skow,* New Richmond, and oral argument by *Mr. Bell.*

For the defendants-appellants there was a brief by *Joe Thrasher* and *Thrasher, Doyle & Pelish, Ltd.,* Rice Lake, and oral argument by *Joe Thrasher.*

Amicus Curiae brief was filed by *William Pharis Horton* and *Murphy, Stolper, Brewster & Desmond, S.C.,* Madison, for Wisconsin Realtors Association.

LOUIS J. CECI, J. This is a review of an unpublished decision of the court of appeals which reversed a judgment granted by the Honorable Warren Winton, Circuit Judge of Washburn county, on a jury verdict awarding the plaintiff, United Farm Agency of Wisconsin, Inc. (United Farm), the commission due on a real estate listing agreement upon the sale of the defendants' (Klasens)

resort to a buyer with whom United Farm had negotiated. The court of appeals concluded that the override provision of the listing agreement was ambiguous. Construing the agreement in the defendants' favor, it determined that the override provision did not extend to a sale to joint buyers, where some of the buyers had negotiated with the broker during the term of the agreement, but others had not. We disagree. We conclude that the override clause is not ambiguous and that under its terms, the plaintiff is entitled to a commission. Accordingly, we reverse and remand to the court of appeals for its disposition of the other issues presented.

The defendants, Janet Klasen and William Klasen, mother and son, purchased a Washburn county resort through the plaintiff broker, United Farm, in 1970 or 1971.[1] In 1975, the Klasens listed the property for sale with United Farm. This listing was unsuccessful and, a few months after its expiration, on September 10, 1976, the parties entered into a second exclusive listing contract. This listing contract was for a term of one year. It was on a printed form[2] and contained the following

---

[1] William's wife was also a co-owner of the resort. However, she was not a signatory to the listing contract and is not a party to this action.

[2] The contract was executed on form WB–12, Hotel, Motel, Resort—Exclusive Listing Contract, which was the form approved for use by the Wisconsin Real Estate Examining Board.

At the time that the listing contract was entered into by the parties, the former real estate examining board was attached to the department of regulation and licensing, sec. 15.405(11), Stats. (1975). The board promulgated rules and approved forms under the authority granted by chs. 440 and 452, and sec. 227.014(2)(a) and (b).

Chapter 94, section 7 of the Laws of 1981 abolished the former real estate examining board and transferred its rule-making and forms approval functions directly to the department of regulation and licensing, effective April 1, 1982. See, secs. 452.05 and 452.07, Stats. The new real estate board acts in an advisory capacity.

provision, which the parties referred to as an "override clause":

"If a sale or exchange is made or a purchaser procured by the Broker, by the undersigned Seller, or by any other person, at the price and upon the terms specified herein, or at any other terms and price accepted by the undersigned Seller, during the term of this contract, or if sold or exchanged within twelve (12) months after the termination of same to anyone with whom the Broker negotiated during the term of this contract and whose name the Broker has submitted to Seller in writing prior to the expiration date of this contract, the Seller agrees to pay Broker a commission of ten per cent (10%) of the sale price."

The ten percent figure was negotiated and agreed to by the parties.

On September 2, 1977, eight days prior to the expiration of the listing contract, United Farm sent a letter to Mr. and Mrs. Bill Klasen which stated in pertinent part:

"It makes good sense for you to alert us to any customer contact since the listing agreement continues your commission obligation for six months if you sell your property to a customer secured by UNITED FARM AGENCY. Let us know if you have any questions on this matter.

"The following list of customers to whom your property was presented is submitted in keeping with procedures recommended by the real-estate commissioner for this state. These names are given to remind you of your obligation, should a sale, lease or option be arranged within six months."[3]

However, ch. 94, section 8(2) of the Laws of 1981 clarified that, "All rules and orders of the real estate examining board in effect prior to the effective date of this act shall remain in force until modified or rescinded by . . . the department of regulation and licensing. . . ." As of this date, approval has not been revoked for form WB–12.

[3] The letter was a form letter supplied by United Farm's home office. The secretary who sent the letter was supposed to line out

There followed on the letter a list of names, including "Mr. and Mrs. Ted Passer."

During the term of the second listing contract, United Farm drafted three offers to purchase, one of which was drafted for the Passers in the name of the corporation they owned. The Passers never signed this offer.

The Passers were shown the property more than once by United Farm. They came to United Farm's office on other occasions. JoAnne and Richard Alvin are the Passers' daughter and son-in-law. The Alvins were to operate the resort in the event it was purchased by the Passers. The Alvins were not listed on the unsigned offer to purchase and were not included on the list of persons with whom United Farm negotiated for sale on behalf of the Klasens.

The contract expired without a sale, and the Klasens did not relist with United Farm. Sometime after the expiration of the listing contract, the Passers again contacted the Klasens, and negotiations for the sale of the property resumed. On May 9, 1978, the Klasens entered into an agreement of sale with the Passers and JoAnne Alvin (on her own behalf and as an agent of Richard Alvin). On June 1, 1978, the parties executed a land contract whereby the Passers purchased a one-half interest in the property, and the Alvins purchased the other one-half interest. A year later, the Passers transferred their entire interest in the property to the Alvins.

United Farm demanded its commission under the override provision of the listing contract; however, the defendants refused to pay it. United Farm then commenced this action to recover its commission under the listing contract.

The six-member jury returned a special verdict finding that the Passers had become likely purchasers of the

the words "six months" and insert "one year" (the appropriate length of time for a resort listing), but failed to do so.

property before the listing contract had expired, that the listing contract had not been modified (by the subsequent letter) to reduce the override provision to six months, and that United Farm was not estopped from claiming the commission. The court denied the Klasens' postverdict motions for judgment notwithstanding the verdict, to change the special verdict answer, and for a new trial. The trial judge found the jury verdict to be supported by the weight of the evidence. The trial court entered judgment on the jury's verdict in favor of United Farm for $17,600, representing ten percent of the total purchase price of the resort.

The Klasens appealed the decision on several theories of trial court error, one of which was that "mandatory strict construction" of the override clause precluded the plaintiff from recovering its commission as a matter of law.

The court of appeals reversed, with Judge Foley filing a dissent. The majority on the court of appeals found that the override clause was ambiguous and, therefore, had to be construed against the broker. The majority stated:

"A contract is ambiguous if it is capable of being understood by a reasonable person in either of two senses. . . . The Klasens read the clause to limit a commission to those instances where the sellers sell *exclusively* to persons with whom the broker negotiated. United Farm reads the clause so that it applies in any instance where the seller subsequently sells to anyone with whom United Farm negotiated or to anyone with whom United Farm negotiated *in combination with any other parties*." (Emphasis supplied.)

The majority therefore determined that the contract's override provision did not entitle United Farm to a commission for a sale by the owner to buyers where only some of the buyers negotiated with the broker. Because

it decided that United Farm had tried its case under a mistaken view of the law, the court exercised its discretionary power of reversal to remand the case for a new trial and recommended that United Farm proceed under a theory of agency on remand. In his dissent, Judge Foley stated that the terms of the contract were not ambiguous and that, based on the jury's findings, United Farm was entitled to its commission.

Two issues were presented on this review:

(1) Can the override clause of form WB–12, Hotel, Motel, Resort—Exclusive Listing Contract, approved for use by the Wisconsin Department of Regulation and Licensing, be reasonably interpreted to mean that the broker's commission will not be due and owing if the buyer with whom the broker negotiated during the term of the listing purchases the property "in combination with" persons with whom the broker did not negotiate?

(2) Even if the provisions of the override clause of the exclusive listing contract were capable of two reasonable interpretations, should the broker's interpretation have been adopted, since the override clause was drafted by the Wisconsin Real Estate Examining Board and not by the broker and it is the broker's interpretation which comports with the legislative intent of and public policy sought to be achieved by the clause?

The disposition of the first issue necessarily turns on whether the override provision is ambiguous. Under Wisconsin law, a broker is entitled to his commission under an "override" or "extension" clause, such as the one in the case before us, when he has satisfied two conditions. As we explained in *Dunn & Stringer Investment Co. v. Krauss*, 264 Wis. 615, 619, 60 N.W.2d 346 (1953):

"The first condition is that the broker must have negotiated with the subsequent purchaser for the sale of the premises during the listing period. The second condi-

tion is that the broker must have filed the name of such subsequent purchaser with the owners prior to the expiration date of the listing period."

*See also, Klapinski v. Polewski,* 19 Wis. 2d 124, 127, 119 N.W.2d 424 (1963) ; *E.M. Boerke, Inc. v. Williams,* 28 Wis.2d 627, 632, 137 N.W.2d 489 (1965).

No argument has been advanced on this appeal that the Passers were not persons with whom the plaintiff negotiated or that their names were not submitted to the Klasens in writing prior to the expiration of the listing. Thus, *Dunn & Stringer, Klapinski,* and *E.M. Boerke* are not controlling here. In each of those cases, this court held that the broker was not entitled to a commission because he had not met the second condition, filing the name of the subsequent purchaser with the seller during the listing term.

It is a basic rule of contract interpretation that a court "cannot redraft the agreement, but must adopt that construction which will result in a reasonable, fair and just contract as opposed to one that is unusual or extraordinary." *Jones v. Jenkins,* 88 Wis.2d 712, 722, 277 N.W.2d 815 (1979). As we stated in *Voluntary Assign. of Watertown Tr. & Equip. Co.,* 94 Wis.2d 622, 637, 289 N.W.2d 288 (1980) :

"[T]he language of a contract must be understood to mean what it clearly expresses, and the courts may not depart from the plain meaning of a contract when it is free from ambiguities. . . ."

In his dissenting opinion at the court of appeals, Judge Foley stated :

"The terms of the contract are not ambiguous, and they do not become ambiguous because of what occurred after the contract was made. Based on the jury's findings, United Farm is entitled to its commission.

"The Klasens sold their property within twelve months after termination of the listing contract. United Farm had negotiated with the buyers during the term of the contract and had submitted the buyers' names to the Klasens as required by the contract. This is all the contract requires. The contract does not require a purchase of the entire interest in the property by the persons with whom United Farm negotiated."

We agree with this reasoning. The defendants' interpretation of the contract—that the override provision applies only when the sale is made exclusively to the persons with whom the broker negotiated—is an unusual and extraordinary construction. The plain meaning of the language of the override clause is that the broker's commission will be due if the seller sells the property to "anyone with whom the broker negotiated" during the listing term and if the broker has provided that person's name to the seller. The word "anyone" is sufficiently broad so as to include a likely purchaser who ultimately purchases the property in combination with other parties.

Finally, although we agree with the courts below that the Alvins were not mere straw parties who got involved in the sale to help the Klasens avoid the payment of the commission, we believe that adoption of the defendants' construction of the override provision might, in the future, encourage sellers to act in concert with possible buyers whose names had not been filed. There would no doubt be an increase in litigation, as brokers sought to prove that the co-purchaser was a straw man.

Since we have concluded that the override clause is unambiguous, it is not necessary to decide whether it should be construed against the broker.

The defendants raised other issues at the court of appeals[4] which that court did not then need to address

---

[4] The Klasens contended at the court of appeals that prejudicial hearsay evidence was erroneously admitted and that they were

because of its disposition of the case. Since the defendants are entitled to be heard on those other issues, we reverse and remand to the court of appeals for its disposition of the other questions presented.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

entitled to a jury instruction and special verdict question on the issue of waiver.