**Dennis FARLEY, Plaintiff and Appellant,**

v.

**CHAMPS FINE FOODS, INC., a North Dakota corporation, Defendant and Appellee.**

**Civ. No. 11209.**

Supreme Court of North Dakota.

April 16, 1987.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, Moorhead, Minn., for plaintiff and appellant; argued by J.P. Dosland.

Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., and Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Richard I. Diamond.

GIERKE, Justice.

Dennis Farley appeals from a district court judgment dismissing his action in which he sought specific performance to compel Champs Fine Foods, Inc. (Champs) to transfer title to four restaurants to him. We affirm.

During 1979 Champs hired Farley to manage four of its franchised "Kentucky Fried Chicken" restaurants in North Dakota and Minnesota. Pursuant to the employment agreement, Farley had an option to purchase up to 50 percent of Champs' common stock from its parent corporation, Champs Food Systems, Ltd. (Champs, Ltd.), if he met minimum operating profit quotas. Champs, Ltd., rejected Farley's attempt to exercise the option on the ground that Farley failed to meet the quotas. Farley and Champs, Ltd., then began negotiations outside of the terms and conditions of the option agreement. The parties disagree on whether the negotiations concerned a purchase of the stock or the assets of Champs.

On June 3, 1983, Farley submitted to Oscar Grubert, chairman of the board of Champs, Ltd., and president of Champs, a detailed purchase agreement to buy

Champs for $548,174. The purchase agreement required Champs, Ltd., to finance the entire sale. This proposal was rejected by Grubert. In a letter to Grubert dated August 2, 1983, Farley proposed the same price terms but modified the financing terms so that only $148,174 of the purchase price would be financed by Champs, Ltd. Grubert also rejected this proposal.

On September 12, 1983, Grubert sent Farley the following letter:

"Further to our telephone conversation, this is to confirm that our Company is not in a position to take a second position security wise on any monies owing to us if we were to sell the Kentucky Fried Chicken U.S. group to you. We would be prepared to take $450,000 plus the balance as a first charge on the said property and premices [sic]. If this is not possible, we would expect the full sum of $550,000 plus money expended on the drive-through or any other changes, in cash.

"Unfortunately this matter has dragged out over too long a period of time, and we now feel that we must reach a conclusion by October 1, 1983 as to whether you are in a position to purchase said business. If by October 1, 1983 we have not entered into an agreement, it would be our intention to change the management of our American Kentucky Fried Chicken units by October 15, 1983."

On September 28, 1983, Farley telephoned Grubert. During that conversation Grubert told Farley that he was not going to enter into any agreement with him. A letter from Farley to Grubert was also dated and mailed September 28, 1983, in which Farley stated that "I am prepared to accept your offer to sell for $550,000 plus monies expended on the Drive-Thru, in cash at the time of closing." The parties dispute whether this letter was mailed before or after their telephone conversation. Champs refused to accept the terms of Farley's letter, and Farley commenced this specific performance action.

Following a bench trial, the court found that negotiations between the parties were for a sale of the stock of Champs, rather than the assets; that Farley's September 28, 1983, acceptance letter was mailed after his telephone conversation with Grubert; and that Farley conditioned his acceptance letter on terms outlined in his June 3, 1983, proposed purchase agreement which was rejected by Grubert. The trial court dismissed Farley's action, concluding, among other things, that the terms of Grubert's September 12, 1983, letter were orally withdrawn by Grubert before Farley purported to accept; that the September 12 letter did not constitute an offer but was part of "the preliminary negotiations of price terms;" and that Farley's September 28 letter was not an acceptance of the terms of Grubert's September 12 letter sufficient to form a specifically enforceable contract.

On appeal Farley challenges numerous findings of fact and conclusions of law. We believe the dispositive issue is whether the trial court correctly determined that the terms contained in Grubert's September 12 letter were orally withdrawn by Grubert before Farley accepted.

A proposal may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards. § 9–03–22, N.D.C.C. Even though a definite time in which acceptance may be made is named in a proposal, the proposer may revoke his proposal within that period unless it was given for consideration. 1 *Williston on Contracts* § 55 (3rd ed. 1957). Sections 9–03–18 and 9–03–19, N.D.C.C., provide:

"*9–03–18. Mode of communication of acceptance.*—If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to. In other cases any reasonable and usual mode may be adopted."

"*9–03–19. When consent communicated.*—Consent is deemed to be communicated fully between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer in conformity to section 9–03–18."

These statutes are a codification of the general rule concerning mailing as an effective mode of acceptance:

"'... the acceptance of an offer is binding from the moment an offeree deposits a properly addressed letter of acceptance in the mailbox, but only if there is an express or implied authorization that the mails are to be used. Such an implied authorization would arise when the offer is communicated by mail.'" *Mansfield v. Smith,* 88 Wis.2d 575, 277 N.W.2d 740, 746 (1979) [quoting *E.M. Boerke, Inc. v. Williams,* 28 Wis.2d 627, 137 N.W.2d 489, 493–494 (1965)].

The trial court found as a fact that Farley mailed the acceptance letter after the telephone conversation in which Grubert informed him that the terms contained in the September 12 letter were withdrawn. We will not disturb a trial court's finding of fact unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Farley testified that he mailed the letter from Grand Forks and then traveled to one of his restaurants in Grafton where he called Grubert in Winnipeg "to let him know that I've accepted and a copy of that acceptance is in the mail to him." According to Farley, Grubert told him "'[y]ou waited too long. We're not going to accept.'" Grubert testified that during the telephone call Farley asked him "how we were doing on the offer that he'd proposed," but recollected little else about the conversation. Grubert did testify, however, that Farley did not tell him that an acceptance letter had been mailed to him.

Farley asserts that the trial court's finding is clearly erroneous because his testimony that he mailed the letter prior to the telephone conversation is "positive and unimpeached," and is uncontradicted by Grubert's testimony. In *Fleck v. State,* 71 N.W.2d 636, 640 (N.D.1955), we quoted with approval from *Crilly v. Morris,* 70 S.D. 584, 19 N.W.2d 836, 840 (1945):

"'The rule is well settled that where an unimpeached witness testifies distinctly and positively to a fact and is uncontradicted, but the statements of the witness are grossly improbable or he has an interest in the question at issue, Courts are not bound to blindly adopt the statements of such witness.'"

In this case Farley is an interested party. Moreover, Grubert's testimony that Farley did not tell him that the letter had been sent, which the trial court was entitled to believe, permits a reasonable inference that Farley did not mail the acceptance letter prior to the telephone conversation. We conclude that the trial court's finding that Farley mailed the acceptance letter after the telephone conversation is not clearly erroneous.

Because Grubert withdrew his proposal before Farley's purported acceptance, no enforceable contract was formed and, therefore, the trial court correctly dismissed the action seeking specific performance. *See Wucherpfennig v. Dooley,* 351 N.W.2d 443 (N.D.1984). We need not address the other issues raised by Farley because they are not necessary to the determination of this case. *E.g., Bohn v. Johnson,* 371 N.W.2d 781, 790 (N.D.1985).

The judgment is affirmed.

ERICKSTAD, C.J., MESCHKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.