300 So.2d 79 (1974)
Neil F. BAYNE, Petitioner,
v.
Dorothy W. GLISSON, As Secretary of State of the State of Florida, Respondent.
No. W-307.
District Court of Appeal of Florida, First District.
August 13, 1974.
Barry S. Sinoff of Jacobs & Sinoff, Jacksonville, for petitioner.
Robert L. Shevin, Atty. Gen., William C. Sherrill, Jr., Asst. Atty. Gen., and Clinton H. Coulter, Jr., Tallahassee, for respondent.
PER CURIAM.
Pursuant to request, the time was shortened for briefs and hearing herein; nevertheless, we have taken pains to give full consideration and careful study to the important issues here involved.
The limited time factor and imminence of election impel us in the public interest to pronounce promptly our judgment upon the ultimate question involved and to defer the court's opinion proper, which will shortly follow.
We have arrived at our judgment in this significant matter after due deliberation and full consideration of the briefs filed, applicable law and able oral argument presented before this Court. Based upon the allegations contained in the Petition for Writ of Mandamus, the Motion to Quash the Alternative Writ of Mandamus, and the Return of Respondent, together with the Affidavits thereto attached and the statements made by the attorneys for the respective parties during oral argument before this court, it is apparent that no factual issue exists and the responses to questions from the Court during oral argument reflect that the appointment of a Commissioner to take testimony and make findings of fact would be an exercise in futility inasmuch as the Petitioner clearly and unequivocally establishes the presence of his representative in the office of the Secretary of State of the State of Florida, ready, willing and anxious to file all documents necessary to qualify petitioner as a *80 candidate for House Seat 24 of the Florida House of Representatives from Duval County, Florida, and Respondent candidly concedes inability to prove a negative, to wit: that Petitioner's representative was not then and there physically present in the office of the Secretary of State ready, willing and able to submit the qualifying papers of petitioner. The preemptory writ of mandamus is accordingly granted, and the Respondent, Secretary of State, is directed forthwith to accept and to file nunc pro tunc the qualification papers and appropriate filing fees of the Petitioner, Neal F. Bayne, as candidate for member of the Florida House of Representatives, House Seat 24, Democrat, from Duval County, Florida, and shall certify Petitioner as such candidate and shall cause said candidate's name to be placed upon the ballot and the absentee ballots for the 1974 General Election.
Formal Writ is withheld in the full confidence that Respondent will comply herewith.
Formal Opinion will follow. In view of the emergency nature of these proceedings and the time factor involved, we dispense with the right to rehearing.
It is so ordered.

FORMAL OPINION
We are here called upon to determine whether the Secretary of State must accept the qualification papers and fees of a prospective candidate when presented within the geographical boundaries of the Office of the Secretary of State within the time prescribed by law even though said papers and fees do not reach a designated election official within the office prior to the deadline due to extraordinary circumstances not caused by the candidate.
Petitioner filed herein his Petition for Writ of Mandamus pursuant to Rule 4.5, subd. b Florida Appellate Rules alleging Petitioner to be a resident and citizen of that geographical area of Duval County, Florida within the boundaries of House Seat 24 of the Florida House of Representatives, meeting all of the requirements for eligibility to qualify and run for the office of Member of the Florida House of Representatives, House Seat 24 as a democratic party candidate. He further alleged that on Tuesday, July 23, 1974, he sent to Tallahassee his representative, the Honorable Robert W. Gordon, Municipal Judge of Neptune Beach, Florida, bearing Petitioner's qualification papers to be filed in accordance with Florida Statute 99.061(1); that the said Robert W. Gordon was inside the office of the Secretary of State (Department of State) at seven minutes before twelve o'clock noon, the deadline for filing, at which time said office was occupied by approximately 100 persons, to wit: election officials, news media personnel, candidates and onlookers; that it was impossible to distinguish the election office personnel from the other persons in the mass confusion; that there were no visible signs instructing people to the appropriate clerks for the filing of qualification papers; that Petitioner's representative began asking where he could file such qualification papers and was finally directed toward a room within the Office of the Secretary of State; that he heard an announcement indicating that the last call was being made for the acceptance of qualification papers, whereupon he attempted to enter the specific room wherein qualification papers were being accepted and filed, but was met at the door by someone who halted his entrance and informed him that it was too late to qualify; he sought an audience with the Secretary of State who "refused to perform her ministerial duty and refused to accept and file" his qualification papers.
We issued our Alternative Writ of Mandamus, whereupon Respondent filed a Motion to Quash same and simultaneously filed a return thereto.
The case was orally argued before this Court during which argument Respondent conceded that the office of the Secretary of State encompasses a major portion of *81 an entire wing of the Capitol Building and that qualification papers were accepted in one room within said complex. An affidavit attached to Respondent's return reflects that in the outer hallway of the wing of the Capitol Building in which the Secretary of State's office complex is located is a doorway with a sign over it which reads "Division of Elections", which door was locked on or about July 8, 1974, and remained locked on July 23, 1974. A map of the office complex of the Secretary of State attached to an affidavit filed by Respondent revealed that the main reception area of the office of the Secretary of State is located at the easterly end of a hallway running east and west in the south end of the Capitol Building and that the Division of Elections' office is the first room to the right as one enters the main reception area. However, an affidavit attached to Respondent's return reflects that the receptionist for the Secretary of State recalled a man fitting the description of Petitioner's representative "at a point in time close to noon * * * asking where to go to qualify." The affidavit recites that the receptionist "told him to take the first door to the left".
It was conceded by Respondent during oral arguments that it was the custom and practice of Respondent to close the door to the particular room in the office complex of the Secretary of State in which qualification papers were filed at exactly twelve o'clock noon (the statutory deadline for qualifying of candidates) and to accept the qualification papers of any candidates in the room at that time although there may be a lapse of time before the actual receipt and filing of the qualification papers. It was further conceded that there was no way for the Respondent to know whether or not any candidate was in any other portion of the office complex because the main entrance door was not blocked, locked nor checked and that Respondent could not in fact refute by competent evidence the physical presence of Petitioner's representative in the office of the Secretary of State (as distinguished from the room within the office complex in which qualifying of candidates was accomplished) at the stroke of twelve o'clock noon, or prior thereto. It therefore appears that there are no factual issues to be resolved, therefore nothing will be accomplished by referring this case to a Commissioner for that purpose.
Accordingly, it is uncontradicted that Petitioner's representative was physically in the office of the Secretary of State, but not in the room within that complex in which qualification papers were to be filed, prior to the statutory deadline. Therefore, there being no factual issue, we must resolve the question recited in the first paragraph of this opinion.
The exact point before us does not appear to have been heretofore considered in Florida, nor are we aware of any case from any other jurisdiction exactly on point.
Florida Statute 99.061(1) provides as follows:
"Nomination of candidates for state, county and United States offices; sworn statement, receipt and filing fee.
(1) Candidates for nomination of any recognized political party for state offices of secretary of state, attorney general, state comptroller, state treasurer, commissioner of education, commissioner of agriculture, state senator, member of the house of representatives, supreme court justice, circuit judge, state attorney and candidates for the offices of representatives to congress, and United States senate are required to file their qualification papers and pay the qualification fees and party assessment, if any has been levied, to the department of state at any time after noon of the first filing date, which shall be the sixty-third day prior to the first primary, but not later than noon of the forty-ninth day prior to the date of the first primary in the year in which any primary is held.
(2) Candidates for nomination of any recognized political party for the office of governor and lieutenant governor and *82 all other candidates for state offices are required to file their qualification papers and pay their qualification fees and party assessment to the department of state at any time after noon of the first filing date, which shall be the sixty-third day prior to the first primary, but not later than noon of the forty-ninth day prior to the date of the first primary in the year in which any primary is held.
(3) Candidates for nomination to a county office shall file their sworn statement and receipt for party assessment with and pay their filing fees to the clerk of the circuit court of the county who shall receive same in his capacity as clerk of the board of county commissioners of said county at any time after noon of the first filing date, which shall be the sixty-third day prior to the first primary, but not later than noon the forty-ninth day prior to the first primary in the year in which any primary is held for the qualifying of such candidates. The clerk of the circuit court shall remit to the secretary of the state executive committee of the political party to which the candidate belongs within thirty (30) days after the closing of qualifying time the amount of the filing fee, two thirds of which shall be used to promote the candidacy of candidates for county offices and members of the legislature.
(4) The department of state shall certify to the board of county commissioners within ten (10) days after closing date for qualifying, the names of all duly qualified candidates for nomination who are required by law to qualify with the department of state.
(5) Within five (5) days after the closing of qualifying time, the department of state or the clerk of the circuit court, as the case may be, shall notify a candidate by registered mail of any error in his papers or fees. Candidates notified shall have seventy-two hours from the time such notification is received (excluding Saturdays, Sundays, and holidays) to correct any such error. If a candidate does not correct such error within the prescribed period he shall be disqualified. This subsection shall not apply to errors or omissions made in the amount of filing fees or the designation of a district or the office for which the candidate qualifies."
In resolving the question before us we must determine what act is sufficient to satisfy the statutory requirement as above set forth. Although, as above stated, we are cited to no case factually in point, the general philosophy of our Supreme Court was stated in State ex rel. Siegendorf v. Stone, Sup.Ct.Fla. 1972, 266 So.2d 345, wherein that Court held that a technical flaw in a candidate's qualifying papers should not prevent his candidacy, saying:
"Literal and `total compliance' with statutory language which reaches hypersensitive levels and which strains the quality of justice is not required to fairly and substantially meet the statutory requirements to qualify as a candidate for public office."
Also affirming the philosophy that the public policy of Florida favors affording the people an opportunity to make a choice in the election of their public officials is State v. Gray, Sup.Ct.Fla. 1953, 69 So.2d 187, 193, wherein the Court said:
"The tendency has been, and still is, to extend further the privilege of the people to participate in their government and to elect officers originally appointed, rather than to curtail such participation by the people."
Several foreign jurisdictions have held that extraordinary circumstances justify that a technically late filing of election papers or fees should be deemed as timely filed.
In the case of In Re Bayne, (1910) 69 Misc. 579, 127 N.Y.S. 915, the Court held *83 to be timely a filing made two days after the time provided by Statute where the Secretary of State, whose duty it was to make an explanatory compilation of the election laws and an election calendar, had stated in the calendar that the final day for filing was the day on which the questioned certificate was filed.
In People ex rel. Simmons v. Ham, (1907), 56 Misc. 112, 106 N.Y.S. 312, the nomination certificate in question was required by Statute to be filed with the County Clerk by a time certain, but the Town Clerk claimed that it was his duty to file the Certificate and, in reliance on such statement, the Elections Supervisor delivered it to him for that purpose, and he failed to file it within the time limited. There the application to require the nominee's name to be placed on the ballot was granted, the Court recognizing the fact that the Statute relating to the filing was mandatory, but holding that in certain circumstances arising from fraud or accident the Court would grant the relief prayed.
The basic rule is stated in 29 C.J.S. Elections § 114 as follows:
"A statutory requirement as to the time for filing a declaration of candidacy is mandatory, and a declaration filed too late is a nullity, at least in the absence of special circumstances or special showing of excuse." (Emphasis added)
Respondent cites Battaglia v. Adams, Sup.Ct.Fla. 1964, 164 So.2d 195; State v. Gray, 1946, 157 Fla. 229, 25 So.2d 492; and State ex rel. Vining v. Gray, 1944, 154 Fla. 255, 17 So.2d 228. However, our examination of those cases reveal that they are not here controlling.
As hereinabove recited the Respondent candidly concedes that she has not customarily construed Florida Statute 99.061 (1) to require the actual filing of candidates qualification papers and the payment of the qualification fees and party assessments prior to the noon deadline therein provided, it being her custom and practice to accept for filing such papers, fees, and assessments as are presented by persons physically present prior to such deadline. In keeping with that practice and procedure we hold that physical presence in the office of the Secretary of State (Department of State) by a candidate, or his representative, armed with the necessary qualification papers and fees, making a diligent bona fide effort to present the same to the appropriate official meets the requirement of the Statute. We further find that it is uncontradicted that Petitioner's representative met those requirements and that Petitioner's qualification papers and fees should have been accepted.
Because of the limited time factor and imminence of the election, we, feeling so impelled in the public interest to pronounce promptly our judgment upon the ultimate question herein involved, heretofore issued our Order granting the peremptory Writ of Mandamus, requiring Respondent to accept the qualification papers and fees of Petitioner, nunc pro tunc and to place his name on the ballot, and absentee ballots for the 1974 General Election.
Accordingly, Respondent's motion to quash the Alternative Writ of Mandamus is denied and our peremptory Writ of Mandamus is, in accordance with our prior above mentioned Order, granted.
It is so ordered.
JOHNSON, Acting C.J., and BOYER and McCORD, JJ., concur.