Wolfgang FALKE, individually and on behalf of all others similarly situated, Appellants,

v.

STATE of Alaska, the Lieutenant Governor and the Election Supervisor in Fairbanks in particular, Appellees.

No. S–605.

Supreme Court of Alaska.

April 18, 1986.

Wolfgang Falke, pro se.

Jonathan B. Rubini, Asst. Atty. Gen., and Harold M. Brown, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

12. Beery merely presumes that such withdrawal occurred. She does not speculate about the date of any withdrawal.

## OPINION

MOORE, Justice.

We are asked in this appeal to consider the statutory requirements a candidate must meet to file for public office in Alaska and whether a Division of Elections policy properly implements those requirements. The trial court ruled that the name of a Fairbanks legislative candidate who had "substantially complied" with the statutory filing deadline should be placed on the 1984 primary ballot. Because we conclude that strict compliance is required, we reverse.

### I.

The pertinent facts are not in dispute. In 1984 the filing deadline for declaring candidacy for the state legislature was June 18 at 12:00 noon. Under AS 15.25.-040, the filing deadline usually is 5:00 p.m. on June 1 of an election year. However, the 1984 deadline was extended by court order, due to litigation over reapportionment.

At approximately 11:56 a.m. on June 18, Paul Frith entered the state Division of Elections office in Fairbanks and requested the forms necessary to file for a state senate seat. Election Supervisor Anne Speilberg handed Frith the required declaration-of-candidacy and conflict-of-interest forms. Frith filled out his declaration *before* the noon deadline. He then set it aside and began to fill out the conflict-of-interest form.

At noon, Speilberg closed the elections office door. Between 12:05 and 12:10 p.m. Frith completed his conflict-of-interest statement. He then handed both documents to Speilberg, who notarized the declaration of candidacy. Rather than use the office's automatic time-stamp clock to mark the time of filing, Speilberg used a manual stamp to affix "RECEIVED June 18 1984" on both documents. Below the date, she handwrote and initialed the time as "11:56 AM." She testified that "it was, in fact, after twelve noon and I used the manual stamp and initialled the time when I gave

him the application to avoid any questions about a late filing."

Elections Division officials follow a procedure of allowing candidates to complete all the necessary documents before they are collected and notarized, rather than distracting candidates by collecting each form upon its completion. According to Division of Elections Director Sandra Stout, the division also has an "established policy," apparently unwritten, that:

> [A]ll candidates who are in the Election Office and have announced their intention to file before the deadline, are considered as having filed timely even though the completion of forms and preliminary verification may not be completed until after the deadline.

On June 25, 1984, Wolfgang Falke filed a complaint for injunctive relief and a declaratory judgment against the State of Alaska, the lieutenant governor and the Fairbanks election supervisor. Falke, who was a candidate for the same senate seat as Frith, sought to have Frith's name removed from the primary election ballot on the basis that Frith's declaration of candidacy was not timely filed.

Superior Court Judge James R. Blair denied Falke's request for an injunction and granted summary judgment in favor of the state. The court found that Frith's declaration of candidacy "was completed and passed across the counter prior to the deadline." The court further concluded that Frith's conflict-of-interest statement was filed in "substantial compliance" with statutory requirements, and that such compliance was sufficient. The court relied on our recognition of the substantial compliance doctrine in *Silides v. Thomas,* 559 P.2d 80 (Alaska 1977). The court ordered Falke to pay $100 in attorney's fees, rejecting his claim to be a public interest litigant.

### II.

Falke brings this appeal to challenge 1) the trial court's grant of summary judgment and determination that Frith's filing was timely, and 2) the award of attorney's fees. Falke seeks prospective relief only,

including an order directing election officials to strictly implement the statutory filing requirements and to abandon their policy of accepting documents completed after the filing deadline. Before we consider the merits of this appeal, we must determine whether it should be dismissed as moot.

### The mootness doctrine

■ The dispute which prompted this lawsuit is technically moot. The 1984 election is over, neither Frith nor Falke was elected,[1] and the question whether Frith's name should have been on the ballot no longer presents a live controversy. As a general rule, we "refrain from deciding questions 'where the facts have rendered the legal issues moot.' " *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985) (quoting *Doe v. State*, 487 P.2d 47, 53 (Alaska 1971)). However, we have recognized on numerous occasions that certain technically moot questions merit review under the "public interest" exception to the mootness doctrine.[2]

We recently articulated the criteria to be considered in determining whether to review a moot question:

The public interest exception involves the consideration of three main factors: 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly

circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.

*Hayes v. Charney*, 693 P.2d at 834 (citations omitted).

We conclude that the immediate question, although technically moot, falls within the public interest exception. First, the issue is capable of repetition so long as election officials adhere to their policy of accepting forms after the filing deadline. Second, although we often consider election cases on an expedited basis, *e.g.*, *Silides*, 559 P.2d 80, it is possible for this question to repeatedly evade review by application of the mootness doctrine. Third, the question raised here is one of considerable public importance. In view of the approaching elections, we think it incumbent to determine whether the statutory requirements for filing for public office are being enforced properly.

### The statutory framework

There are two main chapters in the statutes—AS 15.25 and AS 39.50—that dictate what a would-be candidate for the state legislature must do to gain access to the primary election ballot.

AS 15.25.030[3] requires a candidate to execute under oath and file a declaration of

---

1. Falke was defeated in the Republican primary; Frith lost in the general election after running unopposed in the Democratic primary.

2. *See, e.g., Kentopp v. Anchorage*, 652 P.2d 453, 457–58 (Alaska 1982) and cases cited therein at 457 n. 3.

3. AS 15.25.030 provides:
   Declaration of candidacy. (a) A member of a political party who seeks to become a candidate of the party in the primary election shall execute and file a declaration of candidacy. The declaration shall be executed under oath before an officer authorized to take acknowledgments and shall state in substance:
   (1) the full name of the candidate;
   (2) the full mailing address of the candidate;
   (3) if the candidacy is for the office of state senator or state representative, the election or senate district of which the candidate is a resident;

(4) the office for which the candidate seeks nomination;
(5) the name of the political party of which he is a candidate for nomination;
(6) the full resident address of the candidate;
(7) the date of the primary election at which the candidate declares himself to be a candidate;
(8) that the candidate will meet the specific residency requirements of the office for which he is a candidate;
(9) that the candidate will meet the specific citizenship requirements of the office for which he is a candidate;
(10) that the candidate is a qualified voter as required by law;
(11) that the candidate will meet the specific age requirements of the office for which he is a candidate;
(12) that the candidate requests that his name be placed on the primary election ballot;

candidacy that includes numerous specified items of information. Subsection (b), which was added in 1980, provides: "A person filing a declaration of candidacy under this section shall *simultaneously* file a statement of income sources and business interests which complies with the requirements of AS 39.50." AS 15.25.030(b) (emphasis added). This latter statement is known as a conflict-of-interest statement.

AS 15.25.040 sets out the procedure a candidate must follow to file the required declaration of candidacy. A candidate has two options: to physically deliver, in person or by mail, the declaration, or to deliver a telegram containing certain information specified in the statute, followed by the delivery by registered mail of the declaration not more than fifteen days later. AS 15.25.040(a).[4] Here, Frith chose to file in person. For a candidate who opts to file in person or by mail, AS 15.25.040(a)(1) mandates that the candidate file his declaration by "the actual physical delivery of the declaration in person or by mail at or before 5:00 p.m., prevailing time, June 1...."

> (13) that the required fee accompanies the declaration;
> (14) that he is not a candidate for any other office to be voted on at the primary or general election and that he has not filed another declaration of candidacy or nominating petition for the office for which this declaration is filed;
> (15) the manner in which he wishes his name to appear on the ballot; and
> (16) that the candidate is registered to vote as a member of the political party whose nomination he seeks.
> (b) A person filing a declaration of candidacy under this section shall simultaneously file a statement of income sources and business interests which complies with the requirements of AS 39.50.

4. AS 15.25.040(a) provides:
> Manner and date of filing declaration.
> (a) The declaration is filed by either
> (1) the actual physical delivery of the declaration in person or by mail at or before 5:00 p.m., prevailing time, June 1 of the year in which a general election is held for the office, or
> (2) the actual physical delivery by telegram of a copy in substance of the statements made in paragraphs (1)–(5) of the declaration as required by AS 15.25.030 at or before 5:00 p.m., prevailing time, June 1 of the year in which a general election is held for the office

For 1984, the filing deadline was extended by court order to June 18 at noon. AS 15.25.040(c)[5] requires that the declaration of candidacy be filed either with the director of elections or an election supervisor.

Looking only at AS 15.25, it is clear that Frith was required to execute under oath and file with election officials a declaration of candidacy by 12:00 noon on June 18, and to file a conflict-of-interest statement simultaneously.

The unambiguous language in the above statute cannot be read in the abstract, however, because AS 15.25.030(b)[6] requires the simultaneous filing of a conflict-of-interest statement *"which complies with the requirements of AS 39.50."* (Emphasis added.) This latter statute requires that a candidate file a conflict-of-interest statement "at the time of filing a declaration of candidacy," and that the conflict-of-interest statement be filed "with the Alaska Public Offices Commission" (hereafter APOC). AS 39.50.020.[7]

> and also the actual physical delivery of the declaration containing paragraphs (1)–(16) as required by AS 15.25.030 by registered mail which is received not more than 15 days after that time.

5. AS 15.25.040(c) provides:
> (c) A candidate for a statewide office or a candidate for a district-wide office shall file either with the director or an election supervisor. If the candidate files his declaration with an election supervisor, the election supervisor shall immediately forward the declaration to the director.

6. *See supra* note 3.

7. AS 39.50.020 provides in relevant part:
> Report of financial and business interests. (a) A judicial officer, commissioner, chairman or member of a state commission ... shall file a statement giving income sources and business interests, under oath and on penalty of perjury, within 30 days after taking office as a public official. Candidates for state elective office shall file such a statement at the time of filing a declaration of candidacy or within 30 days of the filing of any nominating petition, or within 30 days of becoming a candidate by any other means.... Refusal or failure to file within the time prescribed shall require that the candidate's filing

*Is the substantial compliance doctrine applicable?*

█ The trial court, after considering the requirements in AS 15.25 and AS 39.50, found that Frith's declaration of candidacy "was completed and passed across the counter prior to the [statutory] deadline" and therefore "was appropriately filed."[8] The court then concluded that Frith's filing of a conflict-of-interest statement ten minutes after the statutory deadline was "timely" because the substantial compliance doctrine of *Silides v. Thomas*, 559 P.2d 80 (Alaska 1977), was applicable.

We disagree. Although the cases are similar, we conclude that Frith's case is distinguishable from *Silides* on the facts, and that the trial court erred in applying the substantial compliance doctrine.

The legal principle is well established, both in Alaska and in other jurisdictions, that election law filing deadlines are to be strictly enforced. *Id.* at 87; *see also Andrews v. Secretary of State*, 235 Md. 106, 200 A.2d 650, 651 (1964). Strict compliance is the rule, and substantial compliance the rare exception. In *Silides*, we recognized that the requirements in AS 15.25 and AS 39.50 were ambiguous regarding the proper manner of filing a conflict-of-interest statement. 559 P.2d at 86. We concluded that substantial compliance in the filing of candidate Silides' statement was sufficient due to

> the lack of clarity inherent in AS 39.50.-020 and the impossibility of compliance with AS 39.50.020 [requiring the statement to be filed with the APOC at the time the declaration of candidacy was filed with the lieutenant governor or an election supervisor] for a would-be candidate living [away from APOC offices]

fees, if any, and filing for office be refused or that a previously accepted filing fee be returned and the candidate's name removed from the filing records....

(b) The governor, lieutenant governor, members of the legislature, and candidates for these offices ... shall file the statement with the Alaska Public Offices Commission.

who files his declaration of candidacy near the June deadline.

*Id.*

However, *Silides* is distinguishable. *Silides* involved a legislative candidate who filed his declaration of candidacy with election officials in Juneau on the morning of the June 1 filing deadline. Simultaneously, he had election officials notarize his already completed conflict-of-interest statement. *Id.* at 85. Unlike Frith, however, Silides did not file his conflict-of-interest statement with election officials. He instead mailed it to the APOC in Anchorage, in apparent reliance on the requirement in AS 39.50.020(b). The statement was not received until after the statutory filing deadline. *Id.* After recognizing the statutory ambiguity, we held that a candidate who filed a timely declaration and who mailed a conflict-of-interest form to the APOC postmarked at any time on the day of the filing deadline would be deemed to have met the statutory requirements. *Id.* at 82, 86.

A key distinction exists between *Silides* and this case. *Silides* involved a candidate who claimed his delay in filing was the result of the statutory ambiguity. Here, Frith filed both his declaration and his conflict-of-interest statement with election officials. He cannot argue, as Silides could, that he had completed his conflict-of-interest form prior to the deadline. He also cannot argue, as Silides did, that his delay resulted because he was confused and mailed the form to the APOC in Anchorage in reliance on an ambiguous statutory scheme. The sole cause of Frith's delay was his arrival at the elections office four minutes before the filing deadline.

Given these circumstances, it was error to apply the *Silides* substantial compliance doctrine. There was no reason to excuse

8. The trial court erred in finding that the declaration was "passed across the counter prior to the deadline." The testimony indicated that Frith filled out his declaration before noon, set it aside, filled out his conflict-of-interest statement, and then handed both documents to officials *after* the noon deadline.

Frith from strictly complying with the language in AS 15.25.040(a) requiring the "actual physical delivery of the declaration ... at or before" the 12:00 noon deadline, and the requirement in AS 15.25.030(b) that he "simultaneously file" a conflict-of-interest statement.

In summary, we conclude that because the statutory ambiguity did not play a role in Frith's case, the substantial compliance doctrine should not have been applied to excuse his late filing of a conflict-of-interest statement. We turn now to the state's argument that there is an alternative basis for affirming the trial court ruling that Frith's filing was "timely."

*Is the Elections Division filing policy statutorily authorized?*

▮ The state contends that Frith's filing was proper because he complied with an Elections Division policy that permits certain candidates to file forms after the deadline. Under this unwritten policy, election office doors are closed as of the statutory filing deadline. Candidates who already are inside and are in the process of completing their forms are permitted to finish and are deemed to have "timely filed" when they turn in forms after the deadline.

The state contends this procedure is a "reasonable and practical administrative response" to a poorly crafted statutory scheme, and that it properly implements statutory filing requirements.[9] The state offers two basic arguments for upholding the policy.

First, the policy is claimed to be a practical way to thwart the potential for chaos to develop at the filing deadline, since some candidates inevitably wait until the last moment to file. The policy avoids penalizing a candidate for unpredictable risks such as crowds or harried officials trying to deal with a flurry of filings. The state relies on

*Bayne v. Glisson,* 300 So.2d 79 (Fla.App. 1974), to bolster this argument.

In *Bayne,* a candidate's representative arrived at the secretary of state's office seven minutes before the statutory filing deadline. *Id.* at 80. Some 100 people crowded the office, there were no signs directing candidates, and mass confusion prevailed. *Id.* When the candidate's representative finally arrived at the proper location to file his papers he was told it was too late. The court, in ruling for the candidate, held that: "[P]resence in the office ... by a candidate, or his representative, *armed with the necessary qualification papers and fees,* making a diligent bona fide effort to present the same to the appropriate official meets the requirement of the Statute." *Id.* at 83 (emphasis added).

A key distinction exists between *Bayne* and this case. *Bayne* involved a person who was inside the office ready to file *completed* papers. The court's holding emphasized that fact. In contrast, the policy at issue here permits candidates to complete their forms after the deadline.

This is obviously a fine distinction. However, as we previously noted, the weight of case law authority holds that statutory filing deadlines are to be strictly enforced.

> [W]here the election statutes fix a date for filing petitions or certificates of candidacy, such documents must be filed before the expiration of the time fixed, and [the] election officials may not exercise any discretion in the matter.

*Andrews v. Secretary of State,* 235 Md. 106, 200 A.2d 650, 651 (1964) (citation omitted); *see also Silides,* 559 P.2d at 87.

The cases generally excuse late filings only where a candidate does everything possible to comply with a filing deadline, but is thwarted due to action by officials. In *Painter v. Shaner,* 667 S.W.2d 123 (Tex. 1984), the doors to the filing office were

---

9. The state notes that where election officials are faced with applying ambiguous statutes, we have given considerable deference to the division's expertise in the conduct of elections. *See Meiners v. Bering Strait School District,* 687 P.2d

287, 296–98 (Alaska 1984) (addressing statutory requirements for recall of municipal officers). However, as discussed above, the statutory filing deadline involved here is not ambiguous.

locked two hours before the filing deadline. The court held that a candidate who had arrived prior to the deadline "armed with all essential documents" should be deemed to have timely filed. *Id.* at 125. The court emphasized that "[n]o delay, miscalculation or dereliction on his part frustrated his filing" on time. *Id.*

In contrast, where a delay in filing is due solely to a candidate's actions, the cases hold that the filing is not to be accepted. *Claveau v. Stark*, 244 A.2d 822 (N.H.1968), presents a factual situation similar to the instant case. There, a gubernatorial candidate tendered his filing fee and began filling out his declaration of candidacy before the 5:00 p.m. statutory deadline. He was "within a minute or less of completing the act when the filings were closed." *Id.* at 823. In denying the candidate relief, the court held that the filing of a declaration of candidacy was "an essential act required by the statute" and that the filing must be "fully completed" before the statutory deadline. *Id.; see also Vandross v. Ellisor*, 347 F.Supp. 197, 207 (D.S.C.1972) (denying relief to candidate who arrived at election office five minutes after the filing deadline).

The principle that statutory filing deadlines must be strictly enforced also was emphasized in two of the cases consolidated in our *Silides* opinion. We ordered the names of candidates Kelley and Schaeffer stricken from the ballot because they failed to comply with the filing deadline in AS 15.13.060(c). 559 P.2d at 87. That statute requires a candidate to file the name and address of his or her campaign treasurer with the APOC within seven days of filing a declaration of candidacy. Schaeffer's designation of treasurer was filed a week late. Kelley never filed a written designation, but argued that he had met the requirement because his treasurer called the APOC prior to the deadline and gave his name and address.

After concluding that the statutory requirements were clear and that the statute vested no discretion in election officials, we held that the statute should be strictly en-

forced. *Id.* We expressly stated that our holding was "grounded on the legal principle that statutory candidate election deadlines are normally strictly enforced." *Id.*

In view of this well-established principle, we conclude that the Elections Division policy of permitting candidates to fill out forms after the statutory filing deadline does not properly implement the statute. In reaching this conclusion we note that the language in AS 15.25.040(a)(1) specifying the filing deadline is clear, and that the statute does not vest discretion in election officials.

Nevertheless, the state suggests a second reason for upholding the division's policy. This argument relies on an analogy to AS 15.15.320, which provides: "Every qualified voter present and in line at the time prescribed for closing the polls may vote." The state contends that this explicit statutory approval of a procedure comparable to that employed by election officials reflects legislative concern that practical problems not interfere with one's right to vote.

This analogy is flawed. Voters waiting in line are ready and have done everything necessary to qualify to vote. In contrast, the division's policy covers not only candidates who are ready to file but also those who have not completed their forms. More important, the division's filing policy—unlike the voting procedure—is not provided for by statute, or even by regulation.

The state insists that the division's procedure is a practical way to avoid inadvertent errors by officials scrambling to handle last-minute filings. This may be true. However, the legislature has not chosen this approach.

The election laws mandate, in plain and unequivocal language, that a candidate physically deliver a declaration of candidacy "at or before 5:00 p.m.," and that a conflict-of-interest statement be "simultaneously filed." AS 15.25.040(a)(1) and AS 15.25.030(b). This statutory scheme does not in any way suggest that a declaration or a conflict-of-interest statement completed after the deadline should be deemed timely. Thus, we conclude that the Elec-

tions Division policy does not properly implement the statutory filing deadline. We therefore reject the state's claim that there is an alternative basis for affirming the trial court. The court erred in holding that Frith's filing was timely and in granting summary judgment to the state.[10]

The judgment is REVERSED.

---

**10.** Falke also claims the trial court erred in denying him status as a "public interest plaintiff" and ordering him to pay $100 in attorney's fees. Because of our holding on the merits of this appeal, the state no longer is entitled to fees as the prevailing party. Thus, the fee award ceases to be an issue. However, we note that it is an abuse of discretion to award attorney's fees where a losing party "in good faith raised a question of genuine public interest before the courts." *Gilbert v. State,* 526 P.2d 1131, 1136 (Alaska 1974). We find that Falke satisfies the criteria that determine whether a party is a public interest litigant. *See Southeast Alaska Conservation Council v. State,* 665 P.2d 544, 553 (Alaska 1983); *Thomas v. Croft,* 614 P.2d 795, 798 (Alaska 1980) ("Plaintiffs who in good faith seek to vindicate the strong public policy favor-

ing fair and correctly conducted elections should not be penalized by an assessment of attorney's fees unless the suit is frivolous.").

In particular, the criterion that only a private party could be expected to bring the suit is satisfied here. Because the election supervisor "backdated" the filing time on Frith's forms to reflect the time Frith *received* them, rather than the time he *filed* them, the potential violation of the filing deadline was obscured. Under these circumstances, the only persons who would know to question the filing and who might bring suit would be other citizens who observed Frith complete his forms after the deadline. This is the type of litigation the public interest exception is intended to encourage. *See Conservation Council,* 665 P.2d at 553–54.