IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LAURA RIVERO LEVEY,

     Appellant,

v.

KEN DETZNER, Secretary of State, State of Florida; PENELOPE TOWNSLEY, Supervisor of Elections, Miami-Dade County, Florida; and DAVID RICHARDSON,

     Appellees.

_____/

CASE NO. 1D14-3854

**CORRECTED PAGES: pg 11**

**CORRECTION IS UNDERLINED IN RED**

**MAILED: September 23, 2014**

**BY: NMS**

Opinion filed September 22, 2014.

An appeal from the Circuit Court for Leon County.
Charles A. Francis, Judge.

John R. Kelso of Levey Lieberman LLP, Miami Beach, for Appellant.

J. Andrew Atkinson, General Counsel, and Ashley E. Davis, Assistant General Counsel, Florida Department of State, for Appellee Florida Secretary of State Kenneth W. Detzner.

R.A. Cuevas, Jr., Miami-Dade County Attorney; Oren Rosenthal and Michael B. Valdes, Assistant County Attorneys, Miami, for Appellee Penelope Townsley.

Mark Herron, Robert J. Telfer, III, and J. Brennan Donnelly of Messer Caparello, P.A., Tallahassee, for Appellee David Richardson.

ORDER ON MOTION FOR REHEARING EN BANC

A judge of this court requested that this cause be considered en banc in

accordance with Florida Rule of Appellate Procedure 9.331(d).  All judges in

regular active service have voted on this request. Less than a majority of those judges voted in favor of rehearing en banc. Accordingly, the request for rehearing en banc is denied.

LEWIS, C.J., WOLF, ROBERTS, CLARK, WETHERELL, ROWE, MARSTILLER, RAY, and OSTERHAUS, JJ., concur.

BENTON, VAN NORTWICK, and PADOVANO, JJ., dissent.

MAKAR, J., dissents in an opinion in which THOMAS, J., joins.

SWANSON, J., dissents with opinion.

MAKAR, J., dissenting from the denial of rehearing en banc.

Presented with two interpretations of an election statute, one that puts a compliant candidate on the ballot and one that does not, our court has chosen the latter course, an en banc vote failing by two votes. Our supreme court has said, however, that election statutes should not be read in overly-rigid ways that deprive the people of their constitutionally-recognized political power to vote for candidates of their choosing. Under these circumstances, en banc review is warranted due to the exceptional importance of the question presented. Rule 9.331(a), Fla. R. App. P. (2014).

I.

Laura Rivero Levey would like to represent the people of House District 113, located in Miami-Dade County, which has a total of 68,218 registered voters.[1] The qualifying period for the 2014 election cycle began at noon on Monday, June 16, 2014, and was set to end at noon on Friday, June 20, 2014. On the second day of that week, Levey timely filed all necessary paperwork to run as a Republican

---

[1] See Fla. Dep't of State, Div. of Elec., 2014 Primary Election, Active Registered Voters by House District, available at http://election.dos.state.fl.us/voter-registration/statistics/pdf/2014/pri2014_CountyPartyHouseDist.pdf (data as of July 28, 2014). Of that number, 27,902 are registered as Democrats, 16,881 are registered as Republicans, 1,545 are registered with other miscellaneous parties, and the remaining 21,890 are nonparty affiliated. Id.

candidate against the incumbent Democrat, who likewise timely filed the required paperwork. Both also timely filed checks in the proper amounts for their qualifying fees, which were drawn upon their respective campaign accounts and made payable to the Florida Department of State (the Department as shorthand).

Based on their submitted paperwork, both Levey and her Democratic compatriot were certified as "qualified" because each had complied with relevant statutory requirements, including the subparagraph at issue in this case, which states:

> (7)(a) *In order for a candidate to be qualified*, the following items must be received by the filing officer by the end of the qualifying period:
>
> 1. *A properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092*, unless the candidate obtained the required number of signatures on petitions pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account. If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account. ***Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.***
>
> . . .

§ 99.061(7)(a)1, Fla. Stat. (2014) (various emphases added). Each of the differently highlighted portions are discussed in turn below.

4

Turning first to the italicized-only portions of the statute, it states that a candidate is deemed "qualified" if she provides the Department by the end of the qualifying period with a check that meets statutory requirements (properly executed, drawn on campaign account, payable to proper person or entity, and so on). No dispute exists that Levey did so; she was thereby deemed "qualified" and the Division of Elections officially informed her so. Likewise, as to her opponent.

What happened in the post-qualifying period, however, triggered the present controversy and spawned the statutory construction dispute at issue. Under section 99.061(7)(a)1, a candidate who is deemed otherwise "qualified" can be *disqualified* based on the last sentence in the subparagraph (italicized and bolded above), which provides that the "[f]ailure to pay the fee as provided in this subparagraph shall disqualify the candidate." Which leads to the banking snafu at center stage in this matter.

Levey's check from SunTrust was drawn upon her campaign account as the statute requires (other payment methods, such as a certified check, PayPal®, or the like, are impermissible) and was filed timely with the Department. Once filed, qualifying fee checks embark on a circuitous route. The Department deposits checks into an account at Bank of America, which then undertakes efforts to collect the funds. Notice that a check is dishonored goes to the Florida Department

5

of Financial Services (DFS), not to the Department; the reason is that funds deposited in the state treasury become treasury funds under the control of DFS.

A check's odyssey through this labyrinth may span a number of days. As a result, qualifying fee checks may not clear before the end of qualifying and may require some effort by banking institutions and election officials to determine whether payment is forthcoming. Such was the case with Levey's check.

The Department deposited Levey's SunTrust check in its Bank of America account on Wednesday, June 18th. Soon thereafter, Bank of America presented the check for payment, but was told that SunTrust had placed a hold on it, apparently because someone in its fraud department decided to investigate the validity of a check from the Republican Party of Florida that had been deposited in Levey's account (the party check had cleared on June 16, 2014).[2] After a second attempt to deposit the check and being told a hold remained on Friday, June 20th, Bank of America returned Levey's check to DFS on Saturday, June 21st, (after the qualifying deadline), denoting it as "uncollected funds." To this point, with qualifying now over, neither the Department of State, the Division, nor Levey had been notified that any problem existed; and as we'll see later, Levey could not

---

[2] The bank investigator's stated reason for why the check drew scrutiny was that the "$2,000 deposit was a very large deposit into a brand new account" that had no "customer history."

avail herself of the certified check cure in section 99.061(7)(a)1 (underlined in the statute above).

The weekend having passed, the next business day, Monday, June 23rd, DFS prepared a debit memorandum notifying the Department that Levey's check had been returned. DFS sent the memorandum via interoffice mail, the Department not receiving it until two days later on June 25th. According to the Bureau Chief of Election Records, debit memoranda are delivered by interoffice mail, not electronically.

Two days later, on Friday, June 27th, the Division—apparently unaware of the looming kerfuffle over Levey's qualifying check—certified her as qualified as a candidate for House District 113. Levey's certification was on the last day of the statutory deadline for doing so. See § 99.061(6), Fla. Stat. (2014) ("The Department of State shall certify to the supervisor of elections, within 7 days after the closing date for qualifying, the names of all duly qualified candidates for nomination or election who have qualified with the Department of State.").

Another weekend passed. On Monday, June 30th, the Division first became aware of the situation. In response, it called Levey the next day, July 1st, to notify her that her check had not cleared and that she was going to be disqualified.

Understandably distraught, Levey responded on Thursday, July 3rd, with a letter from a senior vice president of SunTrust explaining that the snafu related to

Levey's qualifying check was entirely due to bank error and no fault of Levey; a cashier's check from SunTrust drawn from funds in Levey's account was tendered as well.

Almost a week later on Wednesday, July 9th, Levey—having heard nothing from the Department—filed suit seeking a declaration that she was a qualified candidate; she also sought an order directing the Secretary to add her to the list of qualified candidates and directing the Supervisor of Elections to add her name to the ballot for the November 2014 general election.

Two days later, the Department advised Levey that—despite having initially been deemed qualified by the Division—she was now disqualified because her check was deemed dishonored; her cashier's check was later returned to her.

After discovery and an August 8th hearing on the parties' motions for summary judgment, the trial court ruled against Levey on August 18th. In doing so, it found that "[t]here was nothing [Levey] could have done differently that would have changed what happened during the week of qualifying." Nonetheless, it stated:

> 3. The application of the law in this case results in a harsh decision, but the Court is bound by precedent that says when the Legislature speaks clearly to a particular item, the Court is not to guess at what it means. Specifically, the Legislature in Section 14, Chapter 2011-40, Laws of Florida, amended Section 99.061 (7)(a)7 [sic], Florida Statutes, to eliminate or preclude the relief sought by [Levey] in this case.

4. Although a check, properly made and drawn on the campaign account, was delivered during the qualifying period, it was returned. The result was the qualifying fee in this case was not paid *before the end of the qualifying deadline as required by statute*.

(Emphasis added).  Levey appealed and a divided panel of this court affirmed.

II.

Two alternative statutory interpretation paths are in play. The first relies upon a plain reading of the statutory language to reach a sensible and workable result that, happily, effectuates the political power of the citizenry. See Art. 1, § 1, Fla. Const. ("All political power is inherent in the people."). This reading also conforms to principles of strict statutory construction, and advances the judicial philosophy in candidate qualification cases that statutes should be construed to enable the people to exercise their right to vote for their favored candidates. State ex rel. Siegendorf v. Stone, 266 So. 2d 345, 346 (Fla. 1972) ("Literal and 'total compliance' with statutory language which reaches hypersensitive levels and which strains the quality of justice is not required to fairly and substantially meet the statutory requirements to qualify as a candidate for public office.").

In candidate qualification cases, this court has recognized the "general philosophy of our Supreme Court was stated in [Siegendorf], wherein that Court held a technical flaw in a candidate's qualifying papers should not prevent his candidacy[.]" Bayne v. Glisson, 300 So. 2d 79, 82 (Fla. 1st DCA 1974). Thus,

9

rather than disenfranchise candidates and voters, "[i]t is better in such factual situations to let the people decide the ultimate qualifications of candidates unless they appear clearly contrary to law." Siegendorf, 266 So. 2d at 347; see also Hurt v. Naples, 299 S. 2d 17 (Fla. 1974) ("Widening the field of candidates is the rule, not the exception, in Florida."); see generally Validity and effect of statutes exacting filing fees from candidates for public office, § 7[b] ("What constitutes payment—Timeliness of payment or filing receipt"), 89 A.L.R.2d 864 ("The most frequently occurring problem in connection with the meaning of filing fee statutes is whether the fee, admittedly due, has been paid within the time prescribed by the law, and in answering it the tendency of the courts has been to construe the provisions liberally in favor of the candidate.").

This philosophical norm in mind, we turn to the statute. No dispute exists that Levey fully complied with everything she was required to do. She submitted all the requisite items, including a valid check in the proper amount in a timely manner.[3] The statute proclaims that "[i]n order for a candidate to be qualified" specified "items must be received by the filing officer by the end of the qualifying

---

[3] Her situation is unlike cases where a candidate fails to file her qualification papers or filing fees timely, see, e.g., State ex rel. Taylor v. Gray, 25 So. 2d 492 (Fla. 1946) (failure to pay "qualifying fee within the time required by law").

period" including a "properly executed check drawn upon the candidate's campaign account payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092 . . . ." § 99.061(7)(a)1, Fla. Stat. A plain reading of this statutory language supports the conclusion that because Levey fully complied with these requirements, she met the requirements to be qualified; indeed, she was deemed qualified.

That, of course, does not end the story. Simply submitting a compliant check in a timely manner does not ensure one's ultimate qualification for the ballot. Despite being initially deemed qualified, a candidate in Levey's position is subject to possible disqualification for actually failing to pay the fee. The last sentence of statute says so: "Failure to pay the fee as provided in this subparagraph shall disqualify the candidate." Id. What constitutes a "failure to pay" and what effort the Department must take to ensure payment are undefined; no rule or policy exists. Further, nothing in the statute says a candidate's check must clear the bank prior to the end of qualifying; nor does it place any post-qualifying time limit on when it must do so. The statute only states that the "failure to pay the fee" results in disqualification, which leaves unanswered the parameters of the authority and discretion the Department may exercise in these situations.

At this point it is worth noting two things. First, nothing in statutory language supports the trial court's conclusion that a qualifying fee must be paid

"before the end of the qualifying deadline as required by statute." To the contrary, the statute is silent on when payment is to be effectuated. Indeed, the statute as written—and applied by the Department—only requires the submission of a check that meets the requirements (set out in the first sentence of subparagraph 7(a)1) before the end of qualifying; payment can and must occur sometime thereafter. As discovery shows, and reason dictates, for checks submitted late in the qualifying process, the payment of qualifying fee checks can and does occur after qualifying is over.

Second, because payment issues necessarily must be resolved even after qualifying is over, the Department has an affirmative duty to do so. Nothing in the statute (nor in any rule) prohibits the Department from exercising authority and discretion as to payment issues during the post-qualifying period. See § 99.061(10), Fla. Stat. ("The Department of State may prescribe by rule requirements for filing papers to qualify as a candidate under this section."). While neither the statute nor a rule specifies how the Department is to process payment for timely-received qualifying fee checks, it is obvious that it must do so. Discovery in this case shows that the Department engaged in appropriate investigation and notification activities that pose no meaningful administrative burdens.

Most importantly, the context in which the Department operates—i.e., qualifying candidates for public office—suggests that standards or practices that cause admittedly "harsh" results, such as the case at hand, should be avoided. The supreme court's philosophy in this class of cases, one that allows room for substantial compliance, governs. See Browning v. Young, 993 So. 2d 64, 67 (Fla. 1st DCA 2008) (applying substantial compliance doctrine in holding that error in candidate's financial disclosure form did not disqualify her from public office). Problems may arise (such as the erroneous hold on Levey's check in this case that temporarily and wrongfully delayed payment) that can be resolved quickly as the bank's confession of error did as to Levey's check. The Legislature has given no indication that it wants the Department to disqualify fully compliant candidates based on easily correctable bank errors arising after qualifying has ended. While the State has an interest in the orderly administration of the candidate qualification process, the balance decidedly shifts in favor of putting candidates on the ballot under the circumstances presented.

Indeed, it is hard to believe that legislators intended that a fully compliant candidate, such as Levey, be disqualified due to an error beyond her control—when they could easily find themselves in the same position. None of the intervening snafus and delays within the banking system were attributable to Levey, as the trial court specifically held: "[t]here was nothing [she] could have

13

done differently that would have changed what happened during the week of qualifying."[4]

A second and competing construction of section 99.061(7)(a)1, Florida Statues, relies heavily on a sentence (underlined in subparagraph above) that has no application in this case. It states:

> If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account.

Under plain language principles, this sentence is best understood as creating a limited remedy that allows a candidate to file a certified[5] check as a cure *before*

---

[4] The trial court's finding notwithstanding, the suggestion that Levey may have had some fault in what happened is not borne out by the record. At most, SunTrust claimed it sent an email to Levey about a hold on the check; Levey denied receiving an email and no evidence of the actual email exists (only an unhelpful "screen shot" from an all but abandoned software program). But whatever missteps occurred were by the bank, which accepted full responsibility for its errors. For this reason, no *material* disputed facts exist making summary judgment proper. Even if the candidate had received an email from the bank about a hold (not a "return" of the check, which is different), the fact remains that the *Department* did not know about and failed to provide notification of a potential problem until after the end of qualifying.

[5] Under Department policy, a certified check cannot be submitted initially; it can only be submitted as a remedy for a "returned check" under this sentence. Which explains why the Department declined to accept the certified check Levey submitted after the end of the qualifying period.

*qualifying is over*, provided the Department notified the candidate that her check had been returned. It is a remedial sentence, not a punitive one. The remedy serves no purpose if notification is not given until after qualifying is over; a candidate cannot submit a certified check before the "end of qualifying" if she wasn't notified until after the qualifying period has ended. Levey was not notified by the Department about any potential problems with the check until *after qualifying was over*: indeed, the Department did not even know of the problem until ten days after qualifying had ended. Beyond having no application in this case, Levey had no need to cure anything; her check was valid when written and remains valid today.

The alternative construction of this sentence extrapolates its provisions onto the *post*-qualifying period. This makes little sense because the sentence creates a remedy, a certified check, which can be filed only *before* "the end of qualifying." Nothing in this sentence speaks to returns of checks or other check-related problems arising after the end of qualifying; instead, it has a limited, focused purpose to remedy returned check problems that arise prior to the end of qualifying.

Similarly, nothing shows a legislative intent that the phrase "returned for any reason" applies other than in the period before the end of qualifying. The alternative construction of the statute, however, applies this phrase to check-related problems that arise after the end of qualifying, which—rather than a strict

construction of the sentence—amounts to an expansion of it. In context, it makes sense that the Department should "immediately" notify candidates whose checks are "returned for any reason" so that they can file certified checks as a cure before the end of qualifying. Doing so allows for a potentially efficient mechanism to cure returned check problems arising before qualifying ends. But this case is not one of the situations to which the sentence applies. And the application of this phrase to post-qualifying determinations of whether a candidate should be disqualified for the "[f]ailure to pay the fee" imposes a harsh penalty the Legislature has not authorized.

In addition, the alternative approach relies on the italicized portion of the payment/disqualification sentence as having special significance ("Failure to pay the fee *as provided in this subparagraph* shall disqualify the candidate."). If the Legislature intended this italicized language to mean that all qualifying checks (whether they be the initial checks submitted or certified cure checks under the remedial sentence) must clear and yield payment *before* the end of qualifying, it woefully failed. While the italicized language might support the conclusion that a certified check is the requisite method of curing returned check problems discovered prior to the end of qualifying, it is a major leap to conclude that candidates are disqualified if their timely-filed checks do not clear and provide payment until after the end of qualifying.

16

What's more, the 2011 amendment to the cure sentence in section 99.061(7)(a)1 yields little support for the alternative reading of the statute.

> If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until, the end of qualifying ~~notwithstanding, have 48 hours from the time such notification is received, excluding Saturdays, Sundays, and legal holidays,~~ to pay the fee with a cashier's check purchased from funds of the campaign account.

Chapter 2011-40, Laws of Fla. § 14. While the Legislature tightened the timeframe for paying fees with certified checks returned prior to the end of qualifying, it created uncertainty as to what happens when check problems arise after the end of qualifying. The language of the revised statute simply does not address the matter directly. And if the Legislature intended the harsh, if not draconian, result in this case, it could have easily (re)written the statute to say so.

Finally, a troubling and unintended consequence of disqualifying otherwise qualified candidates on the type of banking error in this case is the potential for political shenanigans. What if political operatives wrongfully induce a banking official to put a hold on a gubernatorial candidate's check causing its return after qualifying's end? Ditto as to checks from a political party? Or if a bank official or employee undertakes a pre-textual check fraud investigation that renders a candidate's qualifying account without funds temporarily? Must the Department

17

turn a blind eye and rotely disqualify candidates in these situations? Asking the question answers it: the Department should not.

III.

In conclusion, the natural and literal construction of section 99.061(7)(a)1, one that allows for the Department's acceptance of payment on checks that are erroneously held by a bank, makes the most sense. In contrast, extrapolating statutory provisions that apply only in the pre-qualifying period to situations that arise in the post-qualifying period creates a harsh and unreasonable result the Legislature could not have intended. Disqualifying a candidate who did everything right is both unreasonable and unnecessary. Treiman v. Malmquist, 342 So. 2d 972, 975 (Fla. 1977) ("The right of the people to select their own officers is their sovereign right, and the rule is against imposing unnecessary and unreasonable disqualifications to run."). As it currently stands, the 68,218 registered voters in House District 113 get the short end of the stick. There will be no robust candidate debates, no campaigning on important legislative issues affecting their futures, and no choice between candidates with alternative visions for their district; instead, they have a qualified candidate unnecessarily pushed to the sidelines and another qualified candidate who wins by default without running the race. These circumstances, and the exceptional importance of the legal question presented, warrant en banc review.

18

SWANSON, J., dissenting on denial of en banc.

I concur with Judge Makar that en banc review is warranted in this case. The issues presented are of great public importance and the final opinion will serve as broadly impacting precedent.